## S98A0976. CHAPEL v. THE STATE.
(510 SE2d 802)

FLETCHER, Presiding Justice.

A jury convicted Michael Chapel of malice murder, armed robbery, and possession of a firearm in the commission of a felony in the shooting death of Emogene Thompson.[1] The state sought the death penalty, but the jury returned a verdict of life imprisonment. Chapel appeals, and raises several enumerations of error, including that newly discovered evidence warrants a new trial. Because the new evidence is not so material to have resulted in a different verdict and there is no reversible error in the remaining enumerations, we affirm.

The evidence viewed in the light most favorable to the prosecution shows that on April 3, 1993, Ms. Thompson reported a burglary

---

[1] The crimes occurred April 15, 1993. The grand jury indicted Chapel on October 5, 1993. The trial began on August 4, 1995 and the jury returned its guilty verdicts on September 8, 1995. On September 10, 1995, the trial court sentenced Chapel to life imprisonment for murder, life imprisonment for armed robbery, and five years imprisonment for possession of a firearm, with all sentences to run consecutively. Chapel filed his motion for new trial on October 3, 1995, which the trial court denied on October 9, 1997. Chapel filed his notice of appeal on November 1, 1997 and the case was docketed in this court on March 25, 1998. Oral arguments were heard on July 13, 1998.

to the Gwinnett County police and Chapel was the officer who responded to the call. Ms. Thompson told Chapel that she had $14,000 cash hidden in her trailer home and that someone had stolen $7,000 of it and returned the remainder to its hiding place. She also told him that she and her son Michael Thompson lived alone in the trailer. Chapel told Ms. Thompson he suspected that her son had stolen the money. Ms. Thompson agreed but did not want to press charges. Chapel told her that he would try to retrieve the money. Ms. Thompson told several friends that she was planning to meet Chapel because he wanted to compare serial numbers on bills in his possession with serial numbers on her remaining money. On the evening of April 15, 1993 Ms. Thompson was shot in the head while she was seated in her parked car at a muffler shop on Peachtree Industrial Boulevard. Her remaining money was never recovered.

The state presented (1) DNA evidence showing that a spot of blood in Chapel's police car matched the blood of the victim; (2) witnesses who saw two cars, one of which was a Gwinnett County police car, at the muffler shop between 9:30 and 10:00; (3) testimony from Officer Stone that Chapel was at the fire station that evening and that he left between 9:20 and 9:30; (4) a witness who saw Chapel driving on Peachtree Industrial Boulevard near the muffler shop around 9:30 or 10:00; (5) evidence that Chapel was facing an IRS verification audit with the potential of $4,000 in additional tax liability and that he owed a friend $1,400; (6) witnesses who saw Chapel spending $100 bills; (7) a witness who saw a large sum of money in the purse of Chapel's wife; and (8) a witness who said that Chapel responded to a call a little after 10:00 the night of the murder, refused to assist the complaining witness, and left, saying he had problems of his own.

Chapel testified that he was at a fire station with other officers and fire personnel until around 10:00, when he left to check on a gym that he owned, and then he responded to a call around 10:10. Chapel elicited testimony that shortly after the murder, Officer Stone told his superior officer that Chapel left the fire station between 10:00 and 10:15 and three fire personnel testified that he left around 10:00. Additionally, Chapel contended that the police failed to adequately investigate the case and tried to suggest that another officer, J.P. Morgan, who committed suicide shortly after the murder, and Michael Thompson were involved in illegal drug activities and that the murder and robbery were related to those activities.[2]

1. After reviewing the evidence in the light most favorable to the

[2] The trial court limited the evidence regarding Morgan to testimony that related to the police investigation into Thompson's murder.

jury's determination of guilt, we conclude that a rational trier of fact could have found Chapel guilty of the crime charged.[3]

2. Chapel contends that newly discovered evidence warrants a new trial. Since the trial a new witness has come forward and the victim's purse has been recovered. To obtain a new trial on the basis of newly discovered evidence, Chapel must show among other factors that the new evidence is so material that it would probably produce a different result.[4]

At the motion for new trial hearing, Chapel called Quint Rutland who testified that he smuggled cocaine into Gwinnett County in 1991, paid off Officer Morgan for protection, the victim's son Michael Thompson worked with Morgan in the drug ring, and that Rutland's boss mentioned to him that the victim knew of her son's drug involvement with Morgan. Rutland testified that he had kept this knowledge to himself because he was in jail and feared reprisals, but was no longer incarcerated. The testimony connecting Thompson and Morgan was hearsay and therefore would be inadmissible. Rutland's testimony that drug dealers were bribing Morgan does not go to the heart of the state's case and we cannot conclude that it meets the high materiality requirement to warrant a new trial.

The victim's purse was found in 1996 near where the victim and her son lived and in an area that had been searched by police in 1994 after Chapel's incarceration. The police were unable to lift any fingerprints from the purse or its contents. This evidence provides some support for the defense argument that Michael Thompson was involved in the murder, but it is not so compelling that one must conclude that a different verdict would probably have resulted had it been introduced. Therefore, the trial court did not err in denying the motion for new trial on this ground.

3. (A) The state contended that Chapel's raincoat showed a "high velocity blood spatter" pattern. A state's expert marked spots constituting this pattern. The expert testified that although the spots had not been tested to determine if they were human blood, the spots were consistent with human blood and the pattern of spots was consistent with Chapel shooting Thompson. He also testified that he did not mark the spatter pattern until May 1995, and that he reported his findings in a crime lab report dated June 22, 1995. Chapel contends that the trial court erred in admitting the raincoat because the marks on the coat used and referred to by the state's expert were not on the coat when defense counsel viewed it in March 1995. Chapel, however, has not established that the disclosure to defense counsel

---

[3] *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980).

through the June crime lab report denied counsel a meaningful opportunity to examine and prepare for this evidence.[5] Therefore, we find no reversible error in the admission of the evidence regarding the blood spatter pattern on the coat.

(B) Chapel contends that the introduction of his raincoat was more prejudicial than probative because there was no evidence that the blood spatters on it were human blood. The raincoat, however, was not gory or gruesome, and the lack of evidence connecting it to the victim goes to weight, not admissibility.

(C) Chapel sought a continuance in the motion for new trial hearing in order to present an expert to testify on trajectory and blood spatter pattern. Chapel represented to the trial court that the expert would testify that Chapel could not have fired the fatal shots and that the blood pattern on his raincoat could not have been made from the victim's wounds. Chapel represented to the court that the expert would not testify until he had seen the actual autopsy photographs and that Chapel was as yet unable to obtain the original photographs from the medical examiner, because the doctor who performed the autopsy had left his prior employment. The expert was relevant to Chapel's contention that trial counsel was ineffective in not presenting an expert on bullet trajectory. Because the trial court and this court were able to address the ineffectiveness claim in the absence of the expert testimony,[6] we find no abuse of the trial court's discretion in denying the continuance.[7]

4. Chapel challenges the admission of testimony from three of Thompson's friends that shortly before her death Thompson had told each of them that she planned to meet with Chapel to compare the serial numbers on her remaining money with some money that Chapel had obtained. Prior to trial, the trial court held a hearing at which these friends testified that each had known Thompson for a long time and each spoke with her on a regular and frequent basis, often several times a day. Each testified that Thompson was upset and worried that someone stole half of $14,000 in cash she had in her trailer and that she suspected her son. They also testified about Thompson's statements regarding the planned meeting with Chapel and its purpose.[8] Prior to the admission of the evidence at trial, the trial court heard the witnesses again, weighed the testimony's proba-

---

[5] See *Livingston v. State*, 266 Ga. 501, 503 (467 SE2d 886) (1996) (counsel is entitled to meaningful opportunity to examine evidence against client).

[6] See division 9, infra.

[7] *Fair v. Balkcom*, 216 Ga. 721, 726 (119 SE2d 691) (1961) (whether to grant continuance is within discretion of trial court).

[8] *Boehm v. Abi-Sarkis*, 211 Ga. App. 181, 183 (438 SE2d 410) (1993) (declarations untrustworthy because of inconsistent statements made to others).

tive value against its prejudicial effect, and limited their testimony substantially.

Under the necessity exception[9] to the hearsay rule, hearsay statements are admissible when the evidence is "necessary" and when there are "particular guarantees of trustworthiness."[10] We have previously found that the first criteria is met when the declarant is deceased.[11] However, death or unavailability of the declarant cannot alone satisfy the necessity component without allowing the exception to swallow the rule. Additionally, the proponent of the evidence must show that the statement is relevant to a material fact and that the statement is more probative on that material fact than other evidence that may be procured and offered.[12] These additional elements will help ensure that the necessity exception does not render the rules of evidence meaningless and allow the conduct of trials by hearsay. These factors are met in this case because the testimony tended to establish that Chapel was the officer seen at the muffler shop where Thompson was shot and the state was unable to locate any witnesses to provide that identification.

In determining whether there are sufficient indicia of reliability the trial court must examine the totality of the circumstances surrounding the making of the statements sought to be introduced.[13] The test is whether "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility."[14] Factors that speak to the reliability of the statements will vary depending on the nature of the statements sought to be introduced.[15] Factors showing the reliability of Thompson's statements include (1) Thompson was consistent in relating the plan and purpose for the meeting to her three friends;[16] (2) she lacked a motive to fabricate the story;[17] and (3) there was merely a remote possibility that the statements were based on Thompson's faulty recollection or observation because the witnesses testified that recovery of the money was a matter of great importance to Thompson. Also

---

[9] OCGA § 24-3-1 (b).

[10] *Roper v. State*, 263 Ga. 201, 202 (429 SE2d 668) (1993).

[11] Id.

[12] See *State v. Felton*, 412 SE2d 344, 357-358 (N.C. 1992) (discussing exception under North Carolina rules of evidence).

[13] Id. at 203.

[14] *Idaho v. Wright*, 497 U.S. 805, 820 (110 SC 3139, 111 LE2d 638) (1990).

[15] Compare *Wright*, 497 U.S. at 821-822 (statements of child abuse victim) with *Dutton v. Evans*, 400 U.S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970) (plurality opinion) (statements of co-conspirator made during concealment phase).

[16] *Mallory v. State*, 261 Ga. 625, 628 (409 SE2d 839) (1991) (statements unreliable when declarant made contradictory statements to different witnesses).

[17] Compare *Mallory*, 261 Ga. at 628 (fact that a declarant has no reason to lie is insufficient by itself to establish "particular guarantees of trustworthiness").

appropriately considered were the nature of the statements and the relationship between Thompson and the witnesses. We conclude that the statements satisfied the requirements for admission under the necessity exception to the hearsay rule.[18] Chapel contends that the statements lack trustworthiness because they may have been part of Thompson's efforts to bluff her son that she was pursuing prosecution. Chapel, however, failed to establish a factual basis for his theory that the statements were made when Thompson's son had the opportunity to overhear them.

5. Chapel contends that the admission of DNA evidence was improper because the "partial digestion" testing method used is not generally accepted in the scientific community. According to the state's expert the DNA testing was performed using the restriction fragment length polymorphism (RFLP) methodology, which has been accepted in this state.[19] During one of the steps of the testing procedure there was a failure of the restriction enzyme to completely cut the DNA sample, which is known as "partial digestion," and it results from a contaminant in the sample. The state's expert testified regarding the protocols that the state crime lab follows when dealing with partial digestion. After reviewing the record, we conclude that the trial court did not abuse its discretion in holding that the evidence was admissible under the standards set forth in *Harper v. State*.[20] The conflicting expert opinions on the test results go to the weight rather than the admissibility of the testimony.[21]

6. Chapel contends that the failure of the state to inform the defense of the negative results of a gunshot residue test constitutes a violation of *Brady v. Maryland*.[22] The record at the motion for new trial hearing, however, established that no testing was performed. Therefore, there were no results that were required to be given to Chapel.

7. Chapel did not request an instruction on alibi, but the trial court gave one over his objection. The trial court was not required to give an instruction on alibi absent a defense request because alibi was not Chapel's sole defense.[23] Nevertheless, Chapel presented wit-

---

[18] The trial court properly excluded other statements by these witnesses that failed to meet the trustworthiness requirement.

[19] See *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990); *Redding v. State*, 219 Ga. App. 182 (464 SE2d 824) (1995).

[20] 249 Ga. 519, 525 (292 SE2d 389) (1982).

[21] See *State v. Cauthron*, 846 P.2d 502, 511-512 (Wash. 1993) (en banc); *Fishback v. People*, 851 P.2d 884, 887, n. 6, 893 (Colo. 1993); *State v. Marcus*, 683 A.2d 221, 233 (N.J. Super. Ct. App. Div. 1996).

[22] 373 U.S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[23] See *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991) (trial court must give charge on sole defense of justification even when not requested if there is some evidence to support it).

nesses who testified that Chapel was with them around the time of the murder and, therefore, the trial court did not err in giving a charge on alibi.

Chapel also contends that this charge improperly shifted the burden of proof to him and allowed the state to argue the shifting of the burden in closing argument.

The charge given by the trial court, taken from the pattern jury instructions, stated:

> I charge you that the defendant contends that he was not present at the scene of the alleged offense at the time of its commission. Alibi as a defense involves the impossibility of the defendant's presence at the scene of the alleged offense at the time of its commission. The evidence presented as to time and place must be such as reasonably excludes the possibility of the presence of the defendant at the scene of the alleged offense. The presence of the defendant at the scene of the crime alleged is an essential element of the crimes set forth in this indictment, and the burden of proof rests upon the state to prove such beyond a reasonable doubt.

The third sentence is unfortunate in suggesting that a burden of proof rests with the defendant and the charge would be correct and better without it. Nevertheless, the final sentence is clear in instructing that the burden of proof rests completely with the state. Therefore, we find no reversible error in the giving of the charge.

8. During closing arguments, the prosecutor argued that Chapel had failed to inform his attorney about four one hundred dollar bills found in Chapel's notebook. The trial court overruled Chapel's objection. There was no testimony regarding conversations between Chapel and his trial counsel and the nature of their relationship was irrelevant to any issue in the trial. The prosecutor's argument was based on testimony from an investigator from the district attorney's office who observed counsel as counsel inspected physical evidence. The investigator testified that when defense counsel inspected a briefcase and notebook seized from Chapel, it did not appear to the investigator that counsel discovered the bills that the investigator left secreted in the notebook. The inference regarding Chapel's credibility was thus based on conduct of his counsel. Such an intrusion into the attorney-client relationship as a means to attack the defendant's credibility impinges on the defendant's Sixth Amendment right to counsel and is improper.[24] Nevertheless, we find beyond a reason-

---

[24] See *United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980) (arguing that lawyer's presence during execution of search warrant is inference of guilt is harmful error).

able doubt that the improper comment did not contribute to the verdict.

9. Chapel raises six instances that he contends constitutes ineffective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel, Chapel must show both deficient performance and actual prejudice.[25] Although one critical mistake may constitute ineffective assistance of counsel, we note that the overall record shows that Chapel had two experienced, very competent, and aggressive trial lawyers. Trial counsel investigated the case with the assistance of private investigators, they hired and consulted experts, they were well-prepared and thoroughly cross-examined state's witnesses, they presented well-reasoned legal arguments in pre-trial hearings and during trial, they presented numerous witnesses of their own, and they had cogent responses to every aspect of the state's case.

Chapel contends his counsel was ineffective in failing to present a witness who knew the victim's son and who testified at the motion for new trial hearing that she heard Michael Thompson say that he knew that Chapel was innocent, but that Chapel had to be convicted in order for Thompson to succeed in his multi-million dollar civil suit against Gwinnett County. This evidence is relevant because it supports the defense theory that persons involved with Michael Thompson's drug activities were responsible for the murder and goes to the credibility of Michael Thompson, who testified for the state. Because he was present and did testify, the evidence was admissible as impeachment and substantive evidence.[26]

At the motion for new trial hearing, one of the defense lawyers testified that he did not have any information regarding that statement, but that if he had been aware of it, he would have followed up on it. Chapel's other trial counsel did not testify at the motion for new trial hearing. The witness testified that she told the defense investigators and counsel of the statement. Both investigators testified that they knew of the statement and one testified that he informed counsel of it. The trial court made no factual findings or credibility determinations to resolve this conflicting evidence. Assuming that the witness and investigators made counsel aware of this statement, the fact that counsel forgot to present this evidence, which strongly supported the defense theory, would constitute deficient performance.

Even assuming Chapel has satisfied the deficiency prong, he still must meet the difficult *Strickland* prejudice requirement and demon-

---

[25] *Strickland v. Washington*, 466 U.S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (325 SE2d 362) (1985).

[26] *Guess v. State*, 262 Ga. 487 (422 SE2d 178) (1992).

strate that the result of the trial would likely be different had the evidence been presented.[27] The witness's statement does not go to the heart of the state's evidence, which centered around DNA evidence and witnesses who saw a Gwinnett police car at the scene of the murder. Instead, the evidence focuses on suspicions surrounding Michael Thompson, who was thoroughly cross-examined and whose credibility was strongly challenged on several issues. Therefore, when we consider the witness's single statement in the context of the whole trial, we cannot conclude that it meets the high *Strickland* standard.

Chapel also contends his counsel was deficient in failing to interview alibi witnesses until two years after the murder and that this prejudiced his defense because the alibi witnesses were unable to testify with specificity when they saw Chapel the night of the murder. We recognize that counsel must prioritize his or her investigation and preparation for trial; therefore, we cannot conclude that delaying some interviews falls outside the wide range of reasonable professional assistance. Furthermore, the record shows that several alibi witnesses gave written statements within two weeks of the murder and most testified consistently with their statements.

Chapel challenges his counsel's decision not to seek a nighttime jury visit to the scene, as recommended by the defense investigator. The decision not to seek such a visit is clearly a strategic decision and one that was not unreasonable under all the circumstances.

Chapel also contends that counsel should have presented an expert witness who would have rebutted the testimony of the only witness who placed him near the scene of the murder. Chapel, however, did not call this witness to testify at the motion for new trial hearing and, therefore, cannot establish that the evidence would have been admissible. If the evidence was inadmissible, counsel cannot be deficient in failing to present it.

Chapel contends that his counsel was ineffective in failing to elicit testimony from Chapel regarding Officer J.P. Morgan's connection to drug trafficking. Most of the evidence given by Chapel at the motion for new trial hearing on this subject was based on statements of informants and was therefore hearsay. Accordingly, Chapel has not demonstrated that this evidence was admissible and counsel cannot be deficient for failing to offer inadmissible evidence.

Finally, Chapel contends that his trial counsel was deficient in failing to present an expert on bullet trajectory. Trial counsel testified at the hearing on the motion for new trial that he relied on two experts in concluding that any such testimony would not be conclusive and therefore he decided not to pursue it. That later counsel does

---

[27] *Strickland*, 466 U.S. at 694.

not agree with this assessment does not render the strategic decision unreasonable.

For these reasons, we conclude that the trial court did not err in denying the motion for new trial on the basis of ineffective assistance of trial counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 16, 1998.

*John A. Pickens,* for appellant.

*Daniel J. Porter, District Attorney, Thomas N. Davis, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth L. Jaeger, Assistant Attorney General,* for appellee.