S99A1008. KNIGHT v. THE STATE.
(521 SE2d 819)

HINES, Justice.

A jury found Arthur Knight guilty of two counts of malice murder, two counts of felony murder while in the commission of aggravated assault, aggravated assault, and three counts of possession of a firearm during the commission of a felony in connection with the fatal shootings of Paul Mitchell and Leaa Vurgess and the wounding of Kaiwan Gary. Knight appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence; the legality of the verdicts for felony murder and malice murder; an alleged discovery violation; the alleged restriction of Gary's cross-examination; certain evidentiary rulings; and the trial court's instruction to the jury on voluntary intoxication. Finding the challenges to be without merit, we affirm.[1]

---

[1] The crimes were committed on November 8, 1996. On February 5, 1997, a Chatham

The evidence construed in favor of the verdicts showed that Arthur Knight, through his friendship with Michael Jackson, became acquainted with Paul Mitchell, Leaa Vurgess, and Kaiwan Gary. Mitchell, Vurgess, and Gary used Knight's apartment to store personal items and often for lodging. The three young men dealt in drugs and occasionally gave Knight cocaine.

Mitchell, Vurgess, and Gary had grown discontented with using Knight's apartment because various personal items had been disappearing from it. On November 8, 1996, they attempted to retrieve their personal belongings. When some shoes were not found, the three left to search Jackson's residence. Not finding the items there, they returned to Knight's apartment, accompanied by Jackson. While Gary, Mitchell, and Vurgess searched for their belongings and had their backs to Knight, Knight drew a .38 caliber handgun, opened fire, and shot Gary, then Mitchell, and finally, Vurgess. Jackson tried to grab or hit Knight, but Knight fled.

One bullet hit Mitchell in the back, passed through his lung and a major blood vessel coming out of the heart, and exited the front of the chest, causing internal bleeding and death. Another bullet entered Vurgess' arm, passed through his chest, lungs, and heart before coming to rest in his side, resulting in his death. Gary was treated for a gunshot wound in the arm, and survived. None of the victims were armed at the time of the shooting.

Following the crimes, a .38 caliber revolver was recovered from the residence where Knight was found. It was determined that the bullet removed from Vurgess' body was fired from the same revolver.

Knight claimed that he knew of the men's reputation for violence and shot them in self-defense, scared because Vurgess was reaching for the bed, under which a knife and a handgun were located. However, Knight conceded that he knew that the handgun under the bed was broken. Knight also admitted to a cellmate that the three victims were unarmed and had not threatened him.

1. Knight contends that the State failed to prove his guilt beyond a reasonable doubt because the evidence showed a tense confrontation with the victims and that his actions were justified under OCGA

County grand jury indicted Knight for two counts of malice murder, two counts of felony murder, one count of aggravated assault, and three counts of possession of a firearm during the commission of a felony. Knight was tried September 30, 1997 through October 3, 1997, and found guilty of all charges. On November 14, 1997, Knight was sentenced to concurrent terms of life imprisonment for the malice murders, a concurrent term of twenty years incarceration for the aggravated assault, and three consecutive five-year prison terms for the firearm possession crimes. The felony murder convictions were vacated by operation of law. A motion for new trial was filed on November 18, 1997, amended on September 21, 1998, and denied on January 20, 1999. A notice of appeal was filed on January 25, 1999, and the appeal was docketed in this Court on April 7, 1999. The case was submitted for decision without oral argument on May 31, 1999.

§ 16-3-21. However, witness credibility is a matter to be determined by the jury, OCGA § 24-9-80, as is the question of whether the circumstances of any alleged confrontation between a defendant and the victim "were such as to excite the fears of a reasonable person that he had to use deadly force in order to prevent the use of deadly force against him." *Akins v. State*, 269 Ga. 838, 839 (1) (504 SE2d 196) (1998), citing *Andrews v. State*, 267 Ga. 473, 474 (1) (480 SE2d 29) (1997). To the extent that Knight testified that he acted in self-defense, the jury was free to either accept or reject his testimony. *Harris v. State*, 267 Ga. 435, 436 (1) (479 SE2d 717) (1997). The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Knight did not act in self-defense when he shot the victims and that he was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Relying on *Dumas v. State*, 266 Ga. 797 (471 SE2d 508) (1996), Knight claims that the guilty verdicts for malice murder and felony murder were mutually exclusive because felony murder is specifically a killing without malice. But, a verdict of guilty for felony murder does not constitute a finding that the murder was committed without malice aforethought, but that the murder was committed while in the commission of another felony offense "irrespective of malice." OCGA § 16-5-1 (c). This is substantially different from *Dumas* where verdicts of guilty of malice murder and vehicular homicide were determined to be mutually exclusive because vehicular homicide requires finding that the defendant acted without malice aforethought and without the intention to kill. *Dumas* at 800 (2). The presence or absence of malice is irrelevant to commission of felony murder. Therefore, the offenses are not mutually exclusive as a matter of law. Nor are they as a matter of fact under the evidence in this case. When Knight fired the handgun at Mitchell and Vurgess, he committed aggravated assaults which would support the felony murders. But the evidence also authorized the jury to conclude that Knight acted with malice aforethought in shooting the two men, and therefore, was also guilty of their malice murders. Cf. *Smith v. State*, 267 Ga. 372, 376 (6) (477 SE2d 827) (1996).

3. Knight contends that his convictions should be reversed because he was not notified of exculpatory evidence until the second day of trial. However, the contention is without merit.

Several days after the shootings, two people who were cleaning the crime scene discovered a .38 caliber black revolver wrapped in bloody newspaper. The recovered weapon was logged in as found property under a case number different from that given the homicides. The detective handling the case eventually discovered the report and photographs of the weapon and notified the prosecutor

after the commencement of trial; the prosecutor "immediately" gave the material to defense counsel. Defense counsel moved for a mistrial on the ground that the "State failed to comply with the rules of discovery." The court offered the defense a continuance to do anything it might wish to with regard to the weapon; the court also asked if defense counsel had seen the photographs of the weapon or if counsel needed to examine them further. Defense counsel stated that he did not need to further examine the photographs and declined the continuance. The court then denied the motion for a mistrial.

Insofar as Knight is claiming a violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), "[a] *Brady* violation does not exist where the information sought by the defendant becomes available at trial." *Jenkins v. State*, 269 Ga. 282, 292 (18) (498 SE2d 502) (1998), citing *Davis v. State*, 266 Ga. 801 (2) (471 SE2d 191) (1996). But when there is a failure by the State to comply with any discovery provisions, OCGA § 17-16-6 provides remedies and the grant of a continuance is one of these remedies. *White v. State*, 271 Ga. 130, 131 (3) (518 SE2d 113) (1999); *Felder v. State*, 270 Ga. 641, 645 (6) (514 SE2d 416) (1999). Knight refused the reasonable remedy offered by the trial court. What is more, he has not demonstrated prejudice from the failure to produce the report and photographs of the weapon before trial. *Felder* at 645 (6). Under such circumstances, it was not error for the trial court to refuse to grant a mistrial, and the delayed discovery provides no basis for reversal of Knight's convictions. *Lewis v. State*, 265 Ga. 451 (2) (457 SE2d 173) (1995).

4. Prior to trial, Knight filed a notice of intent to present evidence of acts of violence by the victims against third parties. In response, the State filed a motion in limine seeking to preclude any reference to prior acts of violence by the victims or to the reputation of the victims for violence unless and until Knight set forth a prima facie case of self-defense. Following pretrial hearings to determine the admissibility of such evidence, the trial court ruled that Knight had failed to make a prima facie showing that the victims had assaulted him, and consequently, it would not allow mention of prior specific acts of violence by the victims in opening statement or at any time unless and until the acts became admissible because of the evidence produced at trial. However, the court also ruled that it would permit Knight to present evidence of what he knew of the victims' general reputations. Knight urges that the trial court erred in excluding evidence of specific acts of violence. But that is not the case.

Evidence of specific acts of violence by a victim against third persons may be admissible when the defendant claims justification, and the defendant has the burden of proving that such evidence should be

admitted. *Laster v. State*, 268 Ga. 172, 173 (2) (486 SE2d 153) (1997); *Chandler v. State*, 261 Ga. 402, 407 (2) (b) (405 SE2d 669) (1991).

> To meet that burden, the defendant must, at a minimum, (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification. . . . To make this prima facie showing, the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself. If a defendant fails to make this required showing prior to trial, the trial court may prohibit any mention of the victim's acts of violence during the defendant's opening statement.

*Laster* at 174 (2).

Knight testified in detail about the circumstances of the shooting consistent with what he later testified to at trial: the victims had a reputation for violence; the men were upset because personal items they had stored at Knight's apartment were missing; the victims stated that something had to be done about it; Knight was outnumbered and felt trapped and in danger; and he believed the victims were looking for other weapons located in the room and so he opened fire. However, Knight conceded that the three men were his friends; that he had no actual arguments with them; that they had never physically harmed him and had not touched him at the time of the shootings; and that Knight never saw a weapon in the victims' hands.

This testimony fell well short of showing that any of the victims were aggressors or that they had assaulted Knight. See *Walden v. State*, 267 Ga. 162, 163 (2) (a) (476 SE2d 259) (1996), citing *Chapman v. State*, 258 Ga. 214 (2) (367 SE2d 541) (1988). Contrary to Knight's assertion, the fact that the trial court allowed Knight to testify as to the victims' general reputations for violence did not amount to the trial court finding that Knight's proffer met the *Chapman* standard. The court expressly found otherwise. If anything, the allowance of such evidence was gratuitous and beneficial to Knight and provides no basis for his complaint.

5. Knight fails in the contention that the trial court erred in preventing him from exploring Kaiwan Gary's credibility on cross-examination. Outside the presence of the jury, Knight made a proffer ostensibly for the purpose of impeaching Gary. He sought to contradict Gary's testimony that he had never seen Mitchell or Vurgess with a gun by questioning him about whether he had been with Mitchell or Vurgess when each man allegedly shot someone. The court ruled that Knight could not make such inquiries before the

jury, and thereby get in evidence of prior acts of violence by the victims without having made a prima facie case. See Division 4, supra.

First, during the proffer, Gary testified that he had not seen the men with guns and that he was not with Mitchell when Mitchell allegedly shot a particular individual. Furthermore, later in the trial the court reconsidered its ruling and informed defense counsel that Knight would be permitted to put in any evidence the defense wished to attempt to impeach Gary. However, the defense never recalled Gary for the purpose of impeachment or otherwise. The court provided Knight the opportunity for cross-examination which is the purpose of confrontation; he simply did not exercise it. *Hawkins. v. State*, 175 Ga. App. 606, 609 (2) (333 SE2d 870) (1985).

6. In cross-examination, Knight's counsel asked State's witness, Detective Thomas, about his experience with people smoking crack cocaine and whether he thought Knight had been smoking crack cocaine the morning of his interview with him. Thomas testified that based on his familiarity with the behavior of crack cocaine users, Knight was not under the influence of the drug at the time of their interview. Then the State, in re-direct, asked the detective, to his knowledge, if crack cocaine affected how people behave and caused them "to act paranoid or anything like that," and the detective responded affirmatively. Defense counsel objected to the use of the term "paranoid" and the State rephrased the question to ask the detective what he had observed of the behavior of crack users. The detective responded that some drug users "act as if someone is out to get them, always looking around."

Knight contends that the trial court improperly allowed the detective to testify about his observations of those under the influence of crack cocaine because the observations were irrelevant, prejudicial, and outweighed the probative value of the testimony. He further contends that the detective's description of those under the influence of crack cocaine was in the purview of expert testimony and effectively allowed the prosecution to place expert testimony before the jury through a lay witness. However, the contentions are unavailing.

Any individual may testify, on the basis of personal observation, about whether another person did or did not appear to be intoxicated on a given occasion. *Sweetenburg v. State*, 197 Ga. App. 36, 37 (3) (397 SE2d 451) (1990). Moreover, because of experience and training, a police officer can testify about the state of an individual's sobriety. See *Church v. State*, 210 Ga. App. 670, 671 (2) (436 SE2d 809) (1993). Knight solicited the detective's opinion on sobriety at the time of the interview, qualifying the detective about his experience with crack cocaine users. And because Knight initiated the inquiry into the issue of crack cocaine use, "the prosecution was authorized to further

explore that area." *Jordan v. State*, 267 Ga. 442, 447 (4) (480 SE2d 18) (1997). The fact that the detective described the behavior of some individuals under the influence of drugs after the State's initial use of the term "paranoid," did not affect the admissibility of the detective's own observations based on his experience. What is more, contrary to Knight's claim, by this testimony the State did not establish that Knight was paranoid as the result of the use of crack cocaine. The detective's observation of Knight was that he was not under the influence of crack cocaine at the time of the police interview. Moreover, the detective also stated that crack cocaine affects people differently, and he did not render any opinion about Knight's mental state.

7. Finally, Knight contends that the trial court erred in charging the jury on the law of voluntary intoxication because there was no evidence that Knight was under the influence of any intoxicant at the time of the shootings. However, that is not so. Knight's own trial testimony was that he smoked crack cocaine and that the victims knew of his "habit." Additionally, Knight's cellmate testified that Knight claimed he had smoked cocaine before the shootings. The fact that Detective Thomas believed that Knight did not appear to be under the influence of crack cocaine at the time of his police interview, which took place approximately three and a half hours after the crimes, did not establish Knight's sobriety at the time he committed the crimes. In fact, Knight told Thomas that he had consumed three beers the morning of the shootings. Under these circumstances, it was not error for the trial court to instruct the jury that voluntary intoxication does not excuse criminal responsibility. *Massey v. State*, 270 Ga. 76, 78 (4) (d) (508 SE2d 149) (1998); *Jackson v. State*, 267 Ga. 130, 133 (10) (475 SE2d 637) (1996).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 18, 1999.

*Emory B. Bazemore,* for appellant.

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.