## S00A0756. McCULLEY v. THE STATE.
### (537 SE2d 340)

THOMPSON, Justice.

Shirley Ann McCulley was convicted by a jury of malice murder in the shooting death of Clifford Jarreau, aggravated assault on Jarreau's brother, Brian Glasper, and possession of a firearm during the commission of a crime. She appeals from the judgment of conviction and sentence entered thereon.[1] Finding no error, we affirm. But because the trial court was without jurisdiction to consider and resolve the issue of ineffective assistance of trial counsel, we remand for that purpose.

Previously, McCulley and Jarreau had been in a tumultuous relationship which ended acrimoniously. On the night of the shooting, Jarreau and McCulley arranged to meet at a shopping center in order for Jarreau to transfer title to a vehicle to McCulley in exchange for cash for a bus ticket out of town. When they met, McCulley handed Jarreau a check instead, which he refused to accept. Jarreau returned home. Minutes later, McCulley and her current boyfriend, Leonard "Sonny" Newell, drove to Jarreau's residence. McCulley exited the car holding a gun; Jarreau came out of the house; and McCulley fired one shot into his leg.

Glasper came outside and saw Jarreau on the ground and McCulley standing several feet away holding a gun. Jarreau stated, "Shirley has shot me, call 911." As Glasper approached, McCulley pointed the gun at him and ordered him to get back in the house. Glasper retreated into the house to call 911. Two more shots were fired: one was a close range, defensive wound to Jarreau's wrist as he held a hand in front of his face, and the third and fatal bullet entered the top of Jarreau's head. A neighbor confirmed a lapse of two to three minutes between the first shot and the two final shots. The medical examiner testified that the first shot to Jarreau's leg would have incapacitated him to the extent that he would have been unable

---

[1] The crimes occurred on July 29, 1997. A three-count indictment was returned on August 1, 1997, charging McCulley with malice murder, aggravated assault, and possession of a weapon during the commission of a crime. Trial commenced on December 2, 1997, and the jury returned its verdict of guilty as to all counts on December 6, 1997. On the same day, McCulley was sentenced to life imprisonment for malice murder, a term of ten consecutive years for aggravated assault (seven years to serve followed by three years on probation), and five consecutive years for weapons possession to be served on probation. A timely notice of appeal was filed. The record was not transmitted to this Court nor was any further action taken in the case until one year later, when, on December 8, 1998, new counsel filed a motion for new trial raising several evidentiary issues and a claim of ineffective assistance of trial counsel. The motion was amended several times, and the issues were heard by the trial court. The motion was denied on November 4, 1999, and a second notice of appeal was filed on the same day. The record was subsequently transmitted to this Court on appeal. The case was docketed in this Court on January 26, 2000, and oral argument was heard on April 25, 2000.

to move.

McCulley and Newell drove directly from the scene to the home of a friend, Charles McIntosh. McCulley told McIntosh that she had shot Jarreau and thought she had killed him and she showed McIntosh three spent shell casings from her gun. At McIntosh's urging, McCulley surrendered to the police where she volunteered: "I shot and killed my boyfriend." After receiving *Miranda* warnings McCulley told police that she shot Jarreau at least twice at close range, but that she did so in self-defense because he and Glasper had threatened to kill her. Newell was also interviewed by police on the night of the shootings; he confirmed that McCulley had fired all three shots. Newell was subsequently indicted as a co-defendant along with McCulley.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), for a rational trier of fact to have found McCulley guilty beyond a reasonable doubt of the crimes for which she was convicted.

2. Six weeks after Jarreau's death, Newell committed suicide while released on pretrial bond. The police found two stamped, but unmailed letters in his pocket; one addressed to McCulley and the other to the case investigator Detective Brantley. In the handwritten letter to Detective Brantley, Newell claimed that it was he, not McCulley, who fired the final two shots which killed Jarreau. In the letter to McCulley, Newell wrote that he was confessing his guilt to Detective Brantley because McCulley had "too much on the outside to be locked [up]" for the crimes. In addition, Newell had allegedly confessed his guilt to his mother at some point after his release on bond.

In pretrial proceedings, McCulley sought to introduce the two letters and Newell's oral statement to his mother under the necessity exception to the hearsay rule, or, alternatively, as statements against penal interest. The evidence was disallowed at trial.

(a) *Necessity exception.* Statements by an unavailable declarant may be admitted if necessary, if the testimony displays particularized guarantees of trustworthiness. *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998). The burden is on the party seeking to introduce the evidence to establish that the statement is relevant to a material fact and is more probative of that fact than other available evidence. *Clark v. State*, 271 Ga. 6 (5) (515 SE2d 155) (1999); *Chapel*, supra.

It is without dispute that Newell is unavailable and the evidence is relevant and otherwise unattainable. What must be determined is whether, under the totality of the circumstances, there are particularized guarantees of trustworthiness such that the evidence should have been admitted under the necessity exception, and whether exclusion of the evidence constituted an abuse of the trial court's dis-

cretion.

The following factors are probative of reliability: (1) consistency of the statements; (2) lack of a motive to fabricate; (3) the nature of the statements; (4) the relationship between the declarant and the accused; and (5) whether the statement was based upon a faulty recollection or observation. *Chapel*, supra at 155.

Newell's letters, dated six weeks after the shooting, contradict statements he gave to the police on the day of the crime and are inconsistent with his conversation with McIntosh immediately after the shooting in which he accused McCulley and specifically denied his own guilt. Thus, his purported confession is rendered untrustworthy because of the timely and conflicting statements to others. See *Carr v. State*, 267 Ga. 701 (3) (482 SE2d 314) (1997) (conflicting statements made by declarant to others render hearsay unreliable); *Mallory v. State*, 261 Ga. 625 (2) (409 SE2d 839) (1991) (victim's statements to a friend lacked reliability as they contradicted victim's statements to son); *Atwater v. State*, 233 Ga. App. 339 (3) (503 SE2d 919) (1998) (statements which tend to exonerate a close friend may be subject to partiality and thus lack reliability). And, as the trial court observed, Newell's letters were written after there had been discussions between himself and McCulley and substantial time for reflection.[2]

Under the circumstances, it cannot be said that "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility." (Punctuation omitted.) *Chapel*, supra at 155. Thus, we hold that the hearsay evidence lacked the requisite degree of reliability and trustworthiness to authorize its admission under the necessity exception.

(b) *Statements against penal interest.* Nor were Newell's letters and alleged confession to his mother admissible as statements against penal interest to exculpate McCulley.

> Georgia does not recognize a *third party's* admission against penal interest, when that admission exculpates the defendant: "It is the long-standing rule in this state that declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial. . . ." *Timberlake v. State*, 246 Ga. 488, 492 (271 SE2d 792) (1980); *Turner v. State*, 216 Ga.

---

[2] McCulley was in jail awaiting trial at the time that Newell committed suicide. It is apparent from the content of Newell's letter to McCulley that it was written following his visit with her at the jail. He explained: "I have finally made a decision today when I saw you behind that glass."

App. 896, 899 (2) (456 SE2d 241) (1995). See also Green, Ga. Law of Evidence (5th ed.), § 286.

*Stanford v. State*, 272 Ga. 267, 269 (4) (528 SE2d 246) (2000).

The court properly exercised its discretion in refusing to admit Newell's letters and his purported admission to his mother.

3. The trial court did not err in refusing to instruct the jury on "mere presence" at the scene of a crime, and "pointing a pistol at another" as a lesser offense of aggravated assault with a deadly weapon.

(a) "It is, of course, true that mere proof of the accused's presence at the scene of the crime, without any evidence to show further participation in the commission of the crime, is insufficient to authorize a conviction. [Cits.]" *Muhammad v. State*, 243 Ga. 404, 405 (1) (254 SE2d 356) (1979). However, McCulley admitted that she drove to Jarreau's residence armed with a loaded pistol and that she shot him repeatedly. She asserted a defense of justification, offered evidence of battered person syndrome, and requested and received appropriate jury instructions. In these circumstances, a mere presence charge was inconsistent with evidence of McCulley's direct participation in the crimes. See *Martin v. State*, 271 Ga. 301 (1) (518 SE2d 898) (1999); *Burks v. State*, 268 Ga. 504 (491 SE2d 368) (1997).

(b) "[I]f the pointing of the firearm placed the victim in reasonable apprehension of immediate violent injury, the felony of aggravated assault has occurred." *Rhodes v. State*, 257 Ga. 368, 370 (5) (359 SE2d 670) (1987). See also *Dunagan v. State*, 269 Ga. 590 (2) (502 SE2d 726) (1998). Glasper testified that McCulley pointed the gun directly at him while ordering him to "get back"; and that he retreated accordingly. Since the pointing of the weapon placed the victim in reasonable apprehension of immediate violent injury, a charge on the misdemeanor offense of pointing a pistol was not authorized. *Rhodes*, supra.

4. It is incumbent upon our appellate courts to inquire into our own jurisdiction where there is doubt. *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995); *Williams v. State*, 217 Ga. 312 (122 SE2d 229) (1961). McCulley's original notice of appeal was timely filed by trial counsel.[3] Nothing further took place in the case until the motion for new trial was filed by new counsel, one year later.

A notice of appeal divests the trial court of jurisdiction to alter a

---

[3] The jury entered its verdict on December 6, 1997, and McCulley was sentenced on the same day. Trial counsel filed the first notice of appeal from the judgment of conviction on December 10, 1997. However, the sentence was not filed with the clerk of the trial court until December 17, 1997. Although the first notice of appeal was premature by seven days, it ripened upon the filing of the sentence. See *Betha v. State*, 208 Ga. App. 802 (432 SE2d 242) (1993).

44

judgment while an appeal of that judgment is pending. *Chambers v. State*, 262 Ga. 200 (1) (415 SE2d 643) (1992). Thus, the trial court in this case was without jurisdiction to entertain McCulley's motion for new trial. Id. Hence, the order denying a new trial is a nullity, as is McCulley's second notice of appeal from that order. See *O'Kelly v. State*, 196 Ga. App. 860 (1) (397 SE2d 197) (1990). Consequently, we have limited our consideration on appeal to those enumerations of error which could have been raised directly from the judgment of conviction and sentence.

Because McCulley's current counsel was retained after trial counsel had filed the first notice of appeal, and after 30 days had elapsed from the judgment of conviction and sentence, there was no opportunity to assert a claim of ineffective assistance of trial counsel at the trial level. Therefore, we remand the case to the trial court for appropriate findings concerning the issue of ineffective assistance of trial counsel. *Smith v. State*, 255 Ga. 654, 656 (3) (341 SE2d 5) (1986).

*Judgment affirmed and case remanded. All the Justices concur.*

DECIDED OCTOBER 2, 2000 —
RECONSIDERATION DENIED OCTOBER 26, 2000.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, A. James Rockefeller, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.