S01A0169. PETERSON v. THE STATE.
(549 SE2d 387)

HINES, Justice.

Martin Daniel Peterson was convicted of malice murder in connection with the death of Nina Albright. He appeals, and for the reasons which follow, we affirm and remand.[1]

---

[1] Albright was killed on March 9, 1998. On March 24, 1998, Peterson was indicted by a Houston County grand jury on one count of malice murder. He was tried before a jury September 21-29, 1998 and found guilty. On September 29, 1998 the trial court sentenced Peterson to life in prison. On October 28, 1998, Peterson's trial counsel filed a notice of appeal. New counsel for Peterson filed a motion for new trial on June 1, 1999. Peterson's motion for

Construed to support the verdict, the evidence shows that Peterson lived with Albright and their infant daughter, Destini. One evening, Peterson and Albright argued. Peterson called his brother Kenneth, who came and drove Peterson away. When Peterson returned home, the argument resumed, and Peterson called the police, who arrived and concluded that there would be no further trouble that night. Peterson took some medication. At 10:00 p.m., Albright telephoned Kenneth's home looking for his wife, Donna, and asked that Donna call Albright when Donna got home. About 30 minutes later, Donna called Peterson's house to speak with Albright. Peterson answered the telephone and said that Albright did not want to talk to her. At approximately 11:00 p.m. Peterson called Kenneth's home and asked for a ride to the chiropractor the next morning.

Albright's body was discovered at 9:30 a.m. the next day by Donna, who arrived to take Peterson to the chiropractor. The police were called. They found Albright's cold and stiff body in the living room; Peterson was in the bedroom, apparently asleep. When detectives spoke to him he appeared incoherent and had trouble understanding directions. He said either: "It went too far this time," or "I went too far this time." Peterson's face and forehead were bloody, there were wounds on his right hand, and blood on both hands.

Albright had multiple injuries, but no distinct defensive or offensive wounds. A pair of scissors was near Albright's body, and a kitchen knife was on the coffee table. Near Peterson's bed was a decorative glass bottle filled with sand; the bottle had hair and blood attached to it. The bathroom was in disarray, there were blood splatters on the walls and blood stains in several places, including where Albright's head had been slammed or pressed into the wall. Chemical tests revealed blood on the floor between the bathroom and where Albright's body was found, and some indication that her body was dragged.

Medical evidence showed that Albright was struck in the mouth, then struck in the head with the bottle filled with sand, and her head was slammed into the bathroom wall. She was struck in the head seven or eight times, losing consciousness, was dragged by her head from the bathroom, through the hall to the living room. There, unconscious, she was strangled from the front.

Peterson testified at trial that, during the argument, he attempted to telephone the police. Albright unplugged the telephone,

---

new trial was amended on June 20, 2000, and the motion was denied on July 5, 2000. On August 11, 2000 Peterson filed a motion for permission to file an out-of-time notice of appeal, which was granted that same day. Peterson filed a notice of appeal on August 11, 2000, his appeal was docketed in this Court on October 16, 2000, and submitted for decision on December 11, 2000.

and he saw what he believed to be a knife in her hand, "drawed back to the side of her." He then began to beat her with his fists, and she fell to the floor. He picked a knife off the floor, put it on a table, but was unable to remember anything else until he awoke in the hospital the next day. He did not remember how the holes got in the bathroom wall or how the blood got in the bathroom.

Clothing and paperwork were in Albright's car, and a former boyfriend of Albright's testified that he went to a location near the Georgia-Florida border to meet Albright that night. A note in Peterson's handwriting was in the living room and said in part: "My family, I lost my temper, and I beg you all to forgive me. Nina's family, I beg you to [sic]."

1. The evidence was sufficient to authorize the jury to find Peterson guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In two motions, Peterson sought the introduction of several instances of violent behavior on Albright's part, in support of his defense of justification. See *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991). At two pretrial hearings, the trial court ruled that much of the requested evidence was admissible, but Peterson contends the court erred in excluding evidence of five instances: (1) that in September 1996, "the defendant heard Nina Albright threaten to shoot him and then she threatened to take her own life"; (2) that in February and July 1997, Albright "made various statements to medical personnel concerning her mental state and her past treatment for psychological disorders, including drug and alcohol abuse"; (3) that in the summer of 1997, "Albright verbally shouted at and abused the defendant with extremely vulgar language"; (4) that in November of 1997, "Albright threatened to ram Kenneth Peterson's pickup truck with her vehicle"; and (5) that in March 1998, "Albright spoke to the defendant trying to persuade him to murder her own parents."

Ordinarily, the victim's character and prior acts are not relevant in a criminal proceeding, but an exception can arise when the defendant claims justification as a defense. See *Johnson v. State*, 270 Ga. 234, 235-236 (3) (507 SE2d 737) (1998). To introduce evidence of the victim's prior transactions, the defendant must not only follow the procedural requirements, but must establish the existence of the prior acts by competent evidence, and must make a prima facie showing of justification. *Knight v. State*, 271 Ga. 557, 561 (4) (521 SE2d 819) (1999). To make this prima facie showing, the defendant must show that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly seeking to defend himself. Id.

Peterson failed to meet these requirements. He testified that when Albright unplugged the telephone, her movement was not "quick

or hostile." He could not remember her yelling or speaking. The only thing he perceived as a threat was her holding what he thought was a knife "drawed back" to her side, but there was no testimony that Albright made any movement toward Peterson with the hand in which he "thought" that she had a knife. This fails to show that Albright assaulted Peterson, or that he was honestly attempting to defend himself. See *Lewis v. State*, 268 Ga. 83, 84 (2) (485 SE2d 212) (1997); *Walden v. State*, 267 Ga. 162, 163 (2) (a) (476 SE2d 259) (1996). The fact that the court allowed testimony concerning some prior acts of Albright does not necessarily show that the court found that Peterson made the necessary showings. *Knight*, supra.

Even assuming that Peterson met his burden, there was no abuse of discretion in excluding evidence of the first three instances of which Peterson complains. See *Jones v. State*, 265 Ga. 138, 141 (4) (454 SE2d 482) (1995). As to the September 1996 incident in which Peterson heard Albright threaten to shoot him and then take her own life, the court ruled that any threat to him would be admissible, but not any threat or attempt on her own life. This was not error as evidence that Albright might have threatened suicide would not support an inference that she would act violently toward other persons in general, or toward Peterson in particular. Similarly, statements Albright made to medical personnel concerning her medical history and treatment, and drug abuse, would only reflect on her character and would not illuminate Peterson's justification defense. Nor would the use of foul language toward Peterson; there is no suggestion that this language contained any threat to him.

As to the remaining two instances, even if the requested evidence should have been admitted, refusal to do so was harmless. The jury was presented with evidence of many instances of Albright's violent behavior toward Peterson. There was testimony of the following incidents: in June 1996, Albright struck Peterson's truck with her vehicle while he was traveling at 45 miles an hour, pushed him, slapped him several times, causing scratches on his neck, broke items of household furnishings, threatened to kill Peterson, and attempted to stab him with a barbecue fork; in September 1996, she pointed a loaded pistol at Peterson and told him she was going to kill him; in October 1996, she slapped Peterson, pulled his hair, threw water into his face, and threw a heavy drinking glass into his chest; and in August 1997, Albright slapped Peterson and scratched him several times on the neck and chest. In light of the substantial evidence of Albright's violent acts, it is highly probable that any additional evidence of prior violent acts would not affect the verdict, and any erroneous exclusion of that evidence was harmless. *Sturkey v. State*, 271 Ga. 572 (2) (522 SE2d 463) (1999); *Shaw v. State*, 241 Ga. 308, 309 (245 SE2d 262) (1978). Additionally, exclusion of the evi-

dence was also harmless as the evidence of Peterson's guilt of malice murder was overwhelming; his testimony concerning beating Albright with his fists in the living room in self-defense was contrary to the physical evidence of malice murder, which showed an attack in the bathroom before Albright was dragged into the living room and strangled. See *Lewis*, supra at 84-85 (2).

3. The trial court permitted the State to admit evidence of four statements Albright made in the months before her death, ruling that they were admissible under the necessity exception to hearsay. OCGA § 24-3-1 (b). For a statement to be admitted under OCGA § 24-3-1 (b), there must be particularized guarantees of trustworthiness. See *Abraha v. State*, 271 Ga. 309, 313 (2) (518 SE2d 894) (1999). Peterson contends that the guarantees of trustworthiness surrounding these four statements were insufficient. However, two of these statements were made to investigating police officers shortly after the events that Albright was reporting, and are admissible. See *White v. State*, 268 Ga. 28, 30 (2) (486 SE2d 338) (1997).

The remaining two statements were made to Paustian and Rozelle. In addressing Peterson's pre-trial motion, the court stated that it would reserve ruling on that portion of the motion pertaining to the statements made to Paustian and Rozelle. When their testimony was offered, Peterson did not object to Paustian or Rozelle's testifying as to what Albright had told them. Consequently, nothing has been preserved for appellate review as to Paustian's and Rozelle's testimony; "[a] defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action. [Cit.]" *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996).

4. Peterson contends the trial court erroneously allowed the introduction of the following "similar transactions": that Peterson struck Destini Albright, the couple's infant child; that Jeff Kipa saw Peterson come to Albright's workplace, get into an argument with her, and, when she attempted to walk away, grabbed her by her hair, turned her around, grabbed her shoulders and shook her; and, that Peterson told Mary Vlahos that he hit Albright's head against the floor on July 6, 1997 because Albright "forced him to do so."

There was no error in the court's allowing testimony concerning Peterson's striking Destini. During the pre-trial hearing addressing the admissibility of evidence of these transactions, the court ruled that evidence showing the couple's disputes over the raising of the child could be entered to show the nature of the relationship between Peterson and Albright, but that evidence that Peterson hit the child would not be admitted. The court noted that such evidence might be admissible in rebuttal.

In his direct testimony, Peterson stated that he did not smoke

around Destini and that one of the sources of friction between him and Albright was that Albright wanted to take Destini to the home of a certain friend and that Peterson was very concerned about her being taken to that residence. On cross-examination, Peterson testified that he did not love Albright, and when asked "[s]o why did you need her to stay there?," he responded that he "wanted Destini to be there with me." When asked "Destini is the one that you love?," he responded: "Yes, I do love Destini." When asked "[a]nd you wouldn't do anything to hurt her, would you?," he responded: "Not . . . not on purpose." Under these circumstances, there was no error in the admission of evidence that he struck Destini because such evidence was admissible for purposes of impeachment. See *Hudson v. State*, 271 Ga. 477, 481 (2) (521 SE2d 810) (1999).

Further, although Peterson contested the admission of this evidence in the pre-trial hearing, he did not later object. At the pre-trial hearing, the court ruled that the evidence was inadmissible. After Peterson's testimony, the State argued that Peterson had introduced the subject to the extent that the evidence was admissible for purposes of impeachment. Peterson was silent, and remained so while the court returned to the question of whether slapping Destini was admissible as a similar transaction. Thus, he waived any objection to the court's ruling. See *Sapeu v. State*, 222 Ga. App. 509, 510 (4) (474 SE2d 703) (1996).

Ultimately, Peterson introduced the incident to the jury himself; he returned to the witness stand, and on direct questioning, testified to his parenting of Destini, and related that he had slapped Destini on the face "as a discipline." It was only in the presentation of the State's rebuttal evidence that Ashley was called to the stand and testified that she heard Peterson admit to Albright that he had slapped Destini because she was crying too much.

Nor was there error in allowing the testimony of Kipa and Vlahos. Contrary to Peterson's assertions, Peterson's physical acts against Albright in these incidents were sufficiently similar to the manner in which she was killed to show Peterson's propensity to attack her in that manner. See *Brady v. State*, 270 Ga. 574, 579-580 (6) (513 SE2d 199) (1999). Additionally, the evidence was admissible as showing prior difficulties between the parties.

> Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the

defendant is being prosecuted. *Wall v. State*, 269 Ga. 506 (2) (500 SE2d 904) (1998).

*Mallory v. State*, 271 Ga. 150, 154 (7) (517 SE2d 780) (1999).

5. The trial court admitted into evidence post-incision autopsy photographs of Albright. Such photographs are admissible if necessary to show some material fact that becomes apparent only due to the autopsy. *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983). A hearing was held to determine whether the photographs were admissible, and the medical examiner testified that the photographs were necessary to show the extent and nature of internal injuries to the brain and larynx. The medical examiner also chose one of the two prepared photographs of the larynx as most elucidating, and the court ruled that the other larynx photograph was unnecessary, but that the remainder of the photographs were necessary and admissible to explain to the jury the extent and nature of the injuries Albright suffered. Although Peterson contends the photographs were not necessary, the testimony was otherwise, and the court so ruled. Because the injuries did not become apparent until the autopsy, the photographs were admissible to aid the medical examiner in describing the cause and manner of death, and the court did not abuse its discretion in admitting the photographs. *Jackson v. State*, 272 Ga. 429, 430 (2) (531 SE2d 700) (2000); *Woods v. State*, 265 Ga. 685, 687 (3) (461 SE2d 535) (1995).

6. It is incumbent upon this Court to inquire into its jurisdiction when such is in doubt. *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995). Peterson's original notice of appeal was timely filed by trial counsel on October 28, 1998. Nothing further took place in the case until the motion for new trial was filed by new counsel, on June 1, 1999. That motion asserted ineffectiveness of trial counsel and was ultimately denied by the trial court on July 5, 2000.

A notice of appeal divests the trial court of jurisdiction to alter a judgment while appeal of that judgment is pending. *Chambers v. State*, 262 Ga. 200 (1) (415 SE2d 643) (1992). Thus, the trial court in this case was without jurisdiction to entertain Peterson's motion for new trial. Id. Therefore, the order denying a new trial is a nullity, as is his August 11, 2000 notice of appeal from that order. See *McCulley v. State*, 273 Ga. 40, 44 (4) (537 SE2d 340) (2000). Consequently, this Court must limit its consideration on appeal to those enumerations of error which could have been raised directly from the judgment of conviction and sentence. Id.

Peterson's appellate counsel entered his appearance after trial counsel filed the first notice of appeal, and more than 30 days after the judgment of conviction and sentence. Thus, there was no opportunity to assert a claim of ineffective assistance of trial counsel at the

trial level, and we remand the case to the trial court for appropriate findings concerning the issue of ineffective assistance of trial counsel. Id.

*Judgment affirmed and case remanded with direction. All the Justices concur.*

DECIDED JULY 16, 2001 —
RECONSIDERATION DENIED JULY 27, 2001.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney, Thurbert E. Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.