## 46048. SMITH v. THE STATE.
### (373 SE2d 200)

MARSHALL, Chief Justice.

William C. Smith appeals his conviction of the felony murder of Jerry William Oliver, for which he was sentenced to life imprisonment.[1] We affirm.

During the evening of July 3, 1984, Smith and his co-defendant, Cook, went to River Street in Savannah to "make some money." Earlier, Smith had shown Cook a .357 Magnum pistol and they had discussed going to River Street. They walked around looking for someone to rob, and finally asked a taxicab driver for a ride, which he refused. The two then got a ride with the victim, another cab driver. Smith, seated behind the victim, shot the victim twice (in the head and back), then the two defendants fled to Keith Brown's house. Unemployment papers belonging to Smith — dated the date of the murder and signed by an unemployment worker — were found on the floor of the cab behind the victim's body. The victim's money was missing. Smith and Cook admitted the murder and robbery to Brown. Both defendants were charged with the murder after Cook made a statement to the police. Cook pleaded guilty to felony murder pursuant to an agreement with the state, and testified at Smith's trial. Smith "failed" a polygraph test.

1. The evidence supports the jury's verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Smith contends that it was error to grant the state's motion in limine, which prevented the defense from cross-examining by means of a hypothetical question of a firearms expert as to whether either or both of the persons in the taxicab's back seat could have shot the driver in the driver's seat.

The witness was never qualified in crime-scene reconstruction; his opinion would have been speculation. *Welborn v. State*, 174 Ga. App. 853 (1) (331 SE2d 853) (1985). Moreover, it is error to admit expert opinion as to the issues of fact if, as here, they are not beyond the ken of the average layman. *Williams v. State*, 254 Ga. 508 (2) (330 SE2d 353) (1985) and cits. The jury had adequate evidence from which to resolve this issue of fact. Under felony murder, it was not essential to prove which of the two co-defendants actually fired the shots. Nor was the testimony introduced for the purpose of either impeachment or to refresh memory.

---

[1] The crime was committed on July 3, 1984. Smith was convicted on March 24, 1988, and sentenced on March 25, 1988. A motion for new trial was filed on April 5, 1988, and denied on June 22, 1988. The transcript of evidence was filed on April 20, 1988. Notice of appeal was filed on July 6, 1988. The case was docketed in this Court on July 27, 1988, and orally argued on September 27, 1988.

3. Smith claims that the polygraph results were improperly admitted in evidence because the limiting instructions were not given at the time the evidence was admitted, as they were at the close of the evidence, citing *Chambers v. State*, 141 Ga. App. 438, 446 (233 SE2d 818) (1977). On certiorari, this Court held:

> When polygraph results are admitted at trial, either party is entitled, *upon request*, to have the jury charged concerning the meaning of this evidence. [Emphasis supplied.]

*State v. Chambers*, 240 Ga. 76, 80 (239 SE2d 324) (1977). The instructions were given at the close of the evidence. As to the alleged error in not giving them when the evidence was admitted, this error is not preserved for review, as the appellant did not request such a charge, as required by *State v. Chambers*, supra.

4. Smith contends that it was error to deny his motion for mistrial based upon the polygraph operator's testimony which allegedly revealed Smith's request for the test, which he says was inadmissible under *Brown v. State*, 175 Ga. App. 246 (4) (333 SE2d 124) (1985), and contrary to the trial court's earlier ruling. However, the prosecutor stated that he did not hear the examiner make such a statement. *Brown*, in which there was a refusal to take the test after the defendant had stipulated that he would, is inapplicable. The appellant seeks to agree to the test, then object to its results when they turn out to be negative. "The fact that a party may have attached a request for mistrial to an objection does not automatically elevate the objection to a more serious level." *Foshee v. State*, 256 Ga. 555, 556 (1) (350 SE2d 416) (1986). Moreover, even if there was error, it was harmless, as the appellant agreed to the test.

5. Smith also contends that it was error to allow the above witness to testify that Smith signed the required consent forms for the polygraph test, allegedly contrary to *Brown*, supra, and to the trial court's prior ruling. In addition to what we have ruled in Div. 4, above, we note that the consent form did not indicate that Smith had requested the test, but only that the results would be released to both sides of the case.

6. Smith argues that the polygraph examiner was improperly permitted to testify as to the effect of depressant drugs on the tests, as he was not qualified as a pharmacologist. The appellant himself injected the issue of the effects of drugs on the test. The witness, though not a pharmacologist, was shown to have a knowledge as to the subject matter of the question which was asked.

7. Smith enumerates as error the admission in evidence of the results of the polygraph test after evidence had been adduced that he had taken codeine (morphine) several days before the test. He alleges

that the test was thus not performed according to stipulated test conditions, i.e., a drug-free test subject. The appellant did not preserve this issue for review, because he did not request the trial court to reserve a ruling on the admissibility of the test until after any medical testimony as to his impaired ability to take the test was presented, as permitted by the trial court. Moreover, the examiner testified that a depressant would result in *less* reaction to the deceptive responses, hence there was no harm.

8. Smith next contends that it was error to allow in evidence testimony that his co-defendant was threatened and attacked because of his being called to testify for the state. He says that this put his character in evidence, because he had been in the same jail as the witness/co-defendant. However, there was nothing to connect the appellant with the threats. The two were in different jails, and Cook testified that he was threatened by other inmates in *his* jail. The state was merely rebutting the appellant's attack on the witness' credibility. The appellant's motion for mistrial in connection with this objection was not timely made at the time the objected-to questions were answered.

9. The appellant contends that the trial court erred in denying his challenge to the prosecutor's use of peremptory strikes under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), based upon the state's use of nine out of its ten peremptory strikes to exclude blacks and upon the district attorney's pretextual and non-race-neutral reasons.

In this case, the trial court arguably ruled that no prima facie case of purposeful discrimination was made out, yet still followed the procedure promulgated by this Court in *Williams v. State*, 258 Ga. 80 (3) (365 SE2d 408) (1988), and required the district attorney to give reasons for his strikes Our review of these reasons reveals them to have been race-neutral. There was some doubt as to the race of some potential jurors, and the state should not be required to make such persons prove their race in order to avoid *Batson* objections.

10. Smith enumerates as error the admission in evidence of his statement of February 19, 1986; the failure to conduct a *Jackson-Denno* hearing thereon; the admission in evidence of his July 25, 1984, statement; and the denial of his motion for mistrial because of the admission in evidence of all of his statements. He argues that he was not given the 10 days' notice as to the 1986 statement required by OCGA § 17-7-210, and that a *Jackson-Denno* hearing was necessitated by an alleged conflict in the detective's testimony as to when the appellant had stated he had lost the papers found in the taxicab.

A *Jackson-Denno* hearing was held prior to the admission of the appellant's statements, but he did not request one when the statements were admitted. The appellant was provided with the substance

of the 1984 statement during the previous mistrial of the case. The appellant did not renew any objection as to the 1986 statement when he began his cross-examination of the detective. Although he moved for mistrial upon completion of his cross-examination, this motion was not timely, as he had not asked that the jury be sent out, that a *Jackson-Denno* hearing be conducted, or that any curative action be taken. *Thomas v. State*, 256 Ga. 616 (351 SE2d 453) (1987).

11. Finally, Smith claims that it was error to allow the jurors to redeliberate after returning a verdict of not guilty of armed robbery — the underlying felony for the felony-murder conviction — allegedly without sufficiently recharging the jury. He urges that the trial judge should have withdrawn his original erroneous charge, instructed the jury to disregard it, and then correctly charged them that they had to find the appellant guilty beyond a reasonable doubt. He contends that the charge as given instructed the jury to find the appellant guilty, alerted them to the possible sentences which could be imposed if he was found guilty, and was an expression of disapproval of the jury verdict, contrary to OCGA § 17-9-22.

The appellant was only sentenced to life for the felony murder; no sentence was entered on the armed-robbery conviction, as it merged. As the appellant is not under any sentence for armed robbery, any contentions arising from the armed-robbery verdict are moot. *Cash v. State*, 258 Ga. 460 (1) (368 SE2d 756) (1988).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 20, 1988 — RECONSIDERATION DENIED NOVEMBER 10, 1988.

*Mark J. Nathan*, for appellant.

*Spencer Lawton, Jr.*, District Attorney, *J. Clayton Culp*, Assistant District Attorney, *Michael J. Bowers*, Attorney General, *Paula K. Smith*, Assistant Attorney General, for appellee.