## S95A0633. BEAM v. THE STATE.
(463 SE2d 347)

HINES, Justice.

Steven Beam was convicted of the malice murder of an Atlanta taxicab driver, Oruada Opkani, and sentenced to life imprisonment.[1]

Through the testimony of a female companion in the victim's taxicab with Beam, the State presented evidence that Beam pulled out a handgun and told the victim that he was "going to have to take [him] out. . . ." During the struggle that ensued between the victim and Beam, the victim was shot eight times at close range with two guns. The six frontal wounds suffered by the victim were caused by .38 caliber hollow-point bullets, and the two shots to the victim's back were the result of .22 caliber bullets. Beam exited the taxi and joined his female companion who had left the taxi and run down the street when the victim and Beam began to wrestle with each other. Beam and his companion went to their nearby motel room where Beam washed his bloodied jacket. Shortly thereafter, the two left Atlanta for Indianapolis, Indiana, where, a month later, Beam was arrested while a passenger in a stolen vehicle. After his arrest, his female companion called Atlanta police and reported Beam's involvement in the death of the taxicab driver. A hair removed from a baseball cap found

---

[1] The crime occurred on October 30, 1989, and Beam was indicted on April 17, 1990. He was initially convicted of the crime in 1990, but that conviction was reversed on appeal. *Beam v. State,* 260 Ga. 784 (400 SE2d 327) (1991). Beam's second trial, held June 28-July 1 and July 12-14, 1993, resulted in a guilty verdict on the malice murder charge, and a sentence of life imprisonment. His motion for new trial, filed July 30, 1993, and amended October 17, 1994, was denied November 23, 1994. The notice of appeal was filed in the trial court on December 16, 1994, and the appeal docketed in this Court on January 10, 1995. It was submitted for decision without oral argument on March 6, 1995.

in the cab "microscopically matched" a hair from Beam's head, and a blood droplet found on the lining of an interior pocket of Beam's jacket was found to be of the same type as the victim's blood.

1. The evidence was sufficient to enable a rational trier of fact to find Beam guilty of the malice murder of Opkani beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Beam contends that it was error to admit into evidence the hair found in the baseball cap because the crime lab expert had not compared the hair with the hair of the victim or the female companion, the expert's opinion was speculative, and because a chain of custody was not established.[2]

The opinion of the crime lab expert that the hair found at the crime scene and Beam's hair sample had a common origin was admissible under OCGA § 24-9-67, which states that "[t]he opinions of experts on any question of science . . . or like questions shall always be admissible. . . ." The fact that the expert did not discount the victim and the female companion as possible sources of the hair went to the weight to be given the evidence, not its admissibility. See *Paxton v. State*, 159 Ga. App. 175, 179 (2) (282 SE2d 912) (1981). The chain of custody issue is similarly decided: " 'where there is only a bare speculation of tampering it is proper to admit the evidence and let whatever doubt remains go to its weight.' [Cit.]" *Kerr v. State*, 205 Ga. App. 624, 626 (1) (423 SE2d 276) (1992). See also *Wood v. Jones*, 175 Ga. App. 534, 536 (2) (334 SE2d 9) (1985).

3. Beam contends that defense counsel was erroneously prevented from cross-examining his female companion about the existence of a deal purportedly offered her by prosecutors in exchange for her testimony against him. At a pre-trial hearing, the prosecuting attorney, Wallace, stated that the female companion had not been charged with the taxicab driver's murder and that no deal had been made in exchange for her testimony. Assistant District Attorney Russell, who prosecuted Beam in his 1990 trial, stated that an unrelated armed robbery indictment had been pending against Beam and his female companion at the time of the prior murder trial, and that the attorney representing the companion on the armed robbery charge, Friend, was told that she could not make any representations concerning a deal. Friend stated that the assistant district attorney, who was handling the armed robbery charge, had offered to drop that charge in exchange for the companion's testimony against Beam. The

---

[2] The chain of custody assertion is based on testimony that the baseball cap was not removed from the victim's taxicab when police technicians initially gathered evidence. It was retrieved from the vehicle, which had been towed to a police impound lot five days after the crime.

companion's attorney affirmed Russell's statement that she had refused to discuss any deal, and stated she apprised her client of the situation. The attorney noted that the female companion had, from the beginning of the attorney's representation, expressed her willingness to testify against Beam "regardless." The armed robbery charge against the female companion was placed on the dead docket two weeks after she testified at Beam's 1990 trial.[3]

> Due process requires that evidence of any understanding or agreement, informal or formal, as to future prosecution of a witness on whose testimony the State's case almost entirely depends be disclosed by the prosecutor and be made known to the jury assessing the credibility of the witness. [Cits.] A new trial is in order where evidence affecting the credibility of a witness whose reliability may be determinative of the guilt or innocence of the defendant existed before trial and was not disclosed. [Cit.]

*Watkins v. State*, 264 Ga. 657, 659 (1) (a) (449 SE2d 834) (1994). See also *Potts v. State*, 241 Ga. 67, 70 (2) (243 SE2d 510) (1978). While the armed robbery prosecutor clearly offered a deal to the companion's attorney, that offer had to be limited to the case in which she was authorized to offer a deal — the armed robbery prosecution. Therefore, the armed robbery prosecutor's proposed deal was the offer to forego prosecution of the female companion for armed robbery in exchange for the companion's testimony against Beam on the armed robbery charge. As for the murder charge, it is clear from the statements of the female companion's former attorney and both prosecutors of the murder charge against Beam that there was no deal made in exchange for the companion's testimony against Beam in that case. The subsequent disposition of charges against the female companion, standing alone, does not establish the existence of a deal. *McLemore v. State*, 255 Ga. 107, 108 (2) (335 SE2d 558) (1985). The trial court did not err when it determined there was no deal struck

---

[3] Dead-docketing has been characterized as
a procedural device by which "the prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court." [Cit.] "Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor. A case is still pending which can be called for trial at the judge's pleasure, or upon which the accused can make a demand for trial." [Cits.]
*State v. Creel*, 216 Ga. App. 394, 395 (454 SE2d 804) (1995). See also *Freeman v. State*, 264 Ga. 27 (440 SE2d 181) (1994) (where a murder charge was placed on the dead docket in return for a statement and testimony against another defendant); and *State v. Marcus*, 206 Ga. App. 385 (425 SE2d 351) (1992) (where a case was removed from the dead docket and returned to active status).

with the witness in exchange for her testimony against Beam.

4. The State made an oral motion in limine that defense counsel be prohibited from questioning the female companion about her arrest for the unrelated armed robbery. The trial court agreed that the jury could be made aware that the companion had been arrested and had had the charges against her "dismissed," but then effectively granted the motion in limine by ruling that any mention of the armed robbery charge against the witness would "open the door" to the State's examination of the witness concerning Beam's alleged involvement in the armed robbery and the suspicion that Beam had subsequently killed the armed robbery victim. Beam asserts that this ruling unconstitutionally infringed upon his Sixth Amendment right to confront the witnesses against him.

> The Confrontation Clause of the Sixth Amendment guarantees the defendant in a criminal trial the general right to cross-examine witnesses against him as well as the specific right to cross-examine a key state's witness concerning pending criminal charges against the witness. [Cits.] " 'It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness.' [Cit.] Whether or not such a deal existed is not crucial. [Cit.] What counts is whether the witness may be shading her testimony in an effort to please the prosecution. 'A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception.' [Cits.]"

*Byrd v. State*, 262 Ga. 426, 427 (2) (420 SE2d 748) (1992). See also OCGA § 24-9-68 which provides that "[t]he state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury." The cross-examination of the female companion that defense counsel wished to conduct was not an impeachment of the witness by proof of criminal conviction, but a cross-examination in order to reveal possible biases, prejudices, or ulterior motives of the witness that resulted in her testimony on direct examination. See *Harrison v. State*, 259 Ga. 486, 488 (3) (384 SE2d 643) (1989).

Defense counsel is entitled to a reasonable cross-examination on the relevant issue of "whether the witness entertained any belief of personal benefit from testifying favorably for the prosecution. [Cits.]" *Watkins v. State*, supra, 264 Ga. at 660 (1). While the trial court may exercise reasonable judgment in determining the extent of cross-ex-

amination on a particular subject, the trial court abuses its discretion and commits prejudicial error when it cuts off all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination. *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982). See also *Owens v. State*, 251 Ga. 313, 316 (1) (305 SE2d 102) (1983), and *Hurston v. State*, 206 Ga. App. 570, 573 (3) (426 SE2d 196) (1992). Since Beam's female companion was a key witness against him and the dead-docketed armed robbery charge was still pending (see footnote 3, supra), the trial court committed reversible error when it ruled that examination of the companion as to the armed robbery charge would authorize further examination of the companion about Beam's purported involvement in that crime as well as in the death of the armed robbery victim.

5. Beam next maintains that the trial court impermissibly expressed its opinion that the State's case was true when, in its jury instructions, the trial court informed the jury that Beam contended he was not guilty of the crime charged in the indictment. See OCGA § 17-8-57.

> In order to determine whether a trial court has improperly expressed an opinion in its charge as to what has or has not been proved, the whole charge may be considered. [Cits.] OCGA § 17-8-57 is only violated when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. [Cits.]

*Mullinax v. State*, 255 Ga. 442, 445 (4) (339 SE2d 704) (1986). A review of the entire charge reveals that the trial court described the indictment as the contention of the State and Beam's plea of not guilty as the challenge to and denial of that contention, thereby forming the issue to be decided by the jury. The trial court's instructions informed the jury that Beam was clothed with a presumption of innocence that could be overcome only by proof of guilt beyond a reasonable doubt, and that Beam was not required to prove his innocence. The challenged portion of the charge did not intimate a conclusion on the part of the trial court. Id. Compare *Coleman v. State*, 211 Ga. 704, 705 (5) (88 SE2d 381) (1955) (where the trial court charged the jury that " 'the evidence shows that there was a robbery . . .' ").

6. Beam asserts the trial court should have given his requested charges on voluntary manslaughter and reasonable doubt. Voluntary manslaughter is an offense included in malice murder (see OCGA § 16-5-2), and a trial court must give a written request to charge on an included offense if there is any evidence to support it. *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990). Evidence that the victim struggled with Beam when Beam announced his intent to kill

the victim and brandished a gun is not evidence of provocation which justifies the giving of a charge on voluntary manslaughter. See *Burgess v. State*, 264 Ga. 777, 786 (26) (450 SE2d 680) (1994); *Hardeman v. State*, 252 Ga. 286, 288 (3) (313 SE2d 95) (1984). Consequently, the trial court did not err when it refused to honor Beam's written request to charge the lesser crime of voluntary manslaughter.

While Beam asserts that the trial court's charge on reasonable doubt did not inform the jury of its duty to acquit him should the jury entertain a reasonable doubt, review of the charge given shows that the concept of reasonable doubt was defined for the jury, and the jury was told that it should acquit Beam if "a doubt of the law" existed, i.e., if the jurors' minds were "wavering, unsettled or unsatisfied." See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 2 (D) (1991 ed.). "It is not necessary to give the exact language of a request to charge when the applicable principles are fairly covered by the charge as given. [Cit.]" *Carver v. State*, 262 Ga. 723, 724 (2) (425 SE2d 657) (1993).

7. Beam's remaining contentions of error are either procedurally barred from appellate review or unlikely to recur on retrial.[4]

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 13, 1995.

*Viveca B. Famber*, for appellant.

*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Anita T. Wallace, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General,* for appellee.

---

[4] The contention of error in refusing to charge the jury on the need for corroboration of an accomplice's testimony is dependent on the evidence at trial. The contention that defense counsel was improperly prevented from referring to the companion/witness as an accomplice is unavailing because of defendant's acquiescence. The complaint of the failure to grant a mistrial because Beam's character was impermissibly placed in issue is precluded by Beam's failure to renew the motion for mistrial after curative instructions were given.