## S01A1426. ALLEN v. THE STATE.
(561 SE2d 397)

HINES, Justice.

Haile Allen appeals his convictions for felony murder in the commission of armed robbery, concealment of motor vehicle identity, and giving a law enforcement official a false name, all in connection with the death of Terrance McRae. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that at 9:00 a.m., McRae picked up Young, his girlfriend, in his car. McRae drove Young to her bank where she removed $200 and gave it to McRae. They drove back to McRae's apartment complex, and McRae went to an apartment that was leased to his friend, Burse. Although Burse had moved out of the apartment, the lease had not yet expired and he allowed McRae to use the apartment, from which McRae sold marijuana. Later that morning, Young went to see McRae at the apartment and found McRae and Allen smoking marijuana. Young then went back to the apartment of McRae's mother, located in the complex. When Young left, only McRae and Allen were in the apartment. McRae's white 1987 Chevrolet Caprice was parked next to the apartment. McRae had previously told Young of his intention to buy some automobile wheel rims.

Burse drove to the apartment about 12:45 p.m. that day and found Allen and McRae standing outside. In Allen's presence, McRae showed Burse the wheel rims that he intended to buy, and stated

---

[1] McRae was killed on August 27, 1998. In the March 1999 term of the superior court, Allen was indicted by a DeKalb County grand jury for malice murder, felony murder in the commission of aggravated assault, felony murder in the commission of armed robbery, armed robbery, concealing the identity of a motor vehicle, and giving a false name to a law enforcement officer. After a trial April 26-30, 1999, a jury found him not guilty of malice murder, and guilty of all other charges. On April 30, 1999, he was sentenced to life in prison for felony murder in the commission of armed robbery, twelve months in prison for concealing the identity of a motor vehicle, and twelve months in prison for giving a false name to a law enforcement officer, all sentences to be served concurrently; the court declared that the charges of armed robbery and felony murder in the commission of aggravated assault merged into the felony murder in the commission of armed robbery. See *Malcolm v. State,* 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). On June 2, 1999, Allen filed a motion to allow an out-of-time motion for new trial, and a motion for new trial. An order permitting the out-of-time motion for new trial was filed on June 21, 1999, and the motion for new trial was denied on April 30, 2001. Allen filed a notice of appeal on May 29, 2001, and an amended notice of appeal on May 30, 2001. The appeal was docketed in this Court on June 26, 2001, and submitted for decision on August 20, 2001.

that he would buy them that day for $1,000. Burse did not see any money, but saw a bulge in McRae's pocket. Burse stayed for about ten minutes and then left, leaving Allen and McRae standing outside the apartment. Burse later returned to the apartment and found McRae lying dead in a pool of blood; McRae's car was gone.

Several witnesses heard a gunshot around the time that McRae was killed. A painter who was working in the complex testified that he heard it around 12:30 p.m., but told the police on the day of the incident that it was around 1:00 p.m.; he also testified that the shot was about 20 minutes before the police arrived. Early, a neighbor, testified that the shot was around 12:45 to 1:30 p.m., and that it was 15 or 20 minutes before the police arrived. Vaughn, the man who intended to sell the wheel rims to McRae, said he heard the shot at about 1:30 p.m. In response to a 911 call, the police arrived at 2:24 p.m. McRae was dead from a single gunshot wound to the back of the head, and his right pants pocket had been pulled out. A Winchester nine-millimeter cartridge casing was on the floor. It and the bullet found at the scene were discharged from a nine-millimeter Smith and Wesson pistol. In the weeks before the shooting, Allen was seen with a nine-millimeter Smith and Wesson pistol.

The next day, the police found McRae's car and set up surveillance on it. At that time, it had the proper license plate affixed. Allen and another man approached the car and knelt down behind it. They were arrested shortly thereafter; in Allen's pockets were the keys to McRae's car, the faceplate of the radio in that car, and a pair of pliers. Allen gave the police a false driver's license. After the arrest, the police noted that McRae's car had a different license plate affixed.

At trial, Allen testified that he encountered McRae that morning, accepted his invitation to smoke marijuana, and went to the apartment and did so. Young came there briefly, and then Allen and McRae went outside when Burse arrived. Allen also testified that an unknown "light-skinned dude" came to the apartment. At one point in his testimony, Allen stated that this person arrived before Young; at another, he stated that the "light-skinned dude" arrived after Burse. On cross-examination, he testified that Burse arrived about five minutes after the "light-skinned dude" arrived, that the "light-skinned dude" remained in the apartment while Allen and McRae went outside, and that the "light-skinned dude" left while Allen and McRae were speaking to Burse outside; the "light-skinned dude" spoke to both McRae and Burse. Allen further testified that after Burse and the "light-skinned dude" left, McRae asked Allen to contact a marijuana dealer Allen knew to get a large supply of mari-

juana, and that McRae lent Allen his car for this purpose.[2] He also stated that the car's license plate was changed by the man who accompanied him when he knelt behind the car.

1. Allen urges that the evidence was insufficient to support the verdicts, contending that the evidence against him was completely circumstantial and did not exclude every reasonable hypothesis save that of his guilt. See OCGA § 24-4-6. Specifically, Allen contends that the State's evidence did not exclude the possibility that others killed McRae, and did not show that if Allen killed McRae, that he did so in the course of an armed robbery.[3]

As to the possibility that others killed McRae, Allen points to Early's testimony that before the shot, he heard two male voices and one female voice arguing in Burse's apartment, which was two floors below his own. Other witnesses heard no such argument. "It is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses." *Watkins v. State*, 273 Ga. 307, 309 (1) (540 SE2d 199) (2001). Allen's claim concerning the failure to show armed robbery is based on the contention that McRae's possession of $1,000 for the planned purchase of the wheel rims was not shown. However, as discussed in Division 4, infra, admissible evidence did authorize the jury to conclude that McRae possessed $1,000, but even if such evidence was not admissible, it was not necessary. The indictment stated that Allen took money from McRae by use of a handgun; it did not specify any amount. In addition to the evidence concerning McRae's anticipated purchase of the wheel rims, other evidence authorized the jury to find that McRae had $200 on his person when he was killed.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). The jury was properly charged on the use of circumstantial evidence under OCGA § 24-4-6. The evidence authorized the jury to exclude all rea-

---

[2] Other witnesses testified that few people were allowed to drive McRae's car and that Allen was not among them.

[3] Allen also contends that the evidence failed to show that he committed felony murder in the commission of aggravated assault, but as he was not sentenced for that crime, that issue is moot. *Smith v. State*, 258 Ga. 676, 679 (11) (373 SE2d 200) (1988).

sonable hypotheses other than Allen's guilt and to find Allen guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Allen moved to suppress the videotape of a custodial interview. The trial court suppressed the later portion of the interview, but Allen contends that the earlier part should have been suppressed as well. The court found that Allen waived his *Miranda*[4] rights and participated in the interview freely and voluntarily. See *Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999). This was not error.

Although Allen was arrested for concealing the identity of a motor vehicle, he told the detective conducting the interview that he had spoken to others who told him that McRae had been shot and the police wished to speak with him about it. Allen was arrested at 9:30 p.m., and the interview began at 1:37 a.m. At the beginning of the interview, Allen said he was physically uncomfortable because he was handcuffed behind his back, and the detective moved the handcuffs to the front. He also stated that he was cold and the detective gave him a sweatshirt to place over his legs. Allen did not appear to be under the influence of drugs or alcohol. Allen stated that he was tired, but the unsuppressed portion of the interview lasted only an hour. Allen also asked for something to drink, and the detective stated that they would take a break soon, which they did. At no point did Allen make an unambiguous request for counsel, and his statement that he wanted to call his mother was not such a request. Allen was not a juvenile, but was 20 years old at the time of the interview.

Allen also contends that it is not clear that he stated that he understood his rights. Prior to the taped interview, the detective read Allen his rights. He did so again in the taped interview, and the transcript of that interview shows that the detective asked: "Ah, do you understand these rights I have explained to you? Do you have any questions for me . . . ? OK. I need you to make like a verbal yes or no." Allen responded: "I mean, yeah, I understand." The detective asked: "You do understand?" Allen said: "No I don't have any reply." However, the videotape of the interview shows that when the detective was seeking a clear verbal answer, Allen was speaking simultaneously rather than in the set question-and-answer mode depicted in the transcript, and the court was authorized to find that, as the detective testified, the last response by Allen in this exchange was that no, he did not have any questions of the detective concerning his rights. The court did not err in determining that Allen understood his rights, or, in the totality of the circumstances, in admitting the earlier portion of the interview.

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

3. Allen contends the court erred in granting the State's motion in limine and forbidding Allen to cross-examine Young about physical abuse of her by McRae, and that she once made a complaint against McRae for kidnapping, which she later recanted, incidents which were not related to the shooting of McRae. However, a victim's character is rarely relevant for any purpose in a criminal trial. *Kolokouris v. State*, 271 Ga. 597, 600 (4) (523 SE2d 311) (1999). See also OCGA § 24-2-2. While a defendant is entitled to effective cross-examination, he is not entitled to unfettered cross-examination, and the trial court has broad discretion in limiting its scope. *Kolokouris,* supra. Allen argues that questioning Young about the prior filing of a false charge would impeach her veracity, but "[i]nstances of specific misconduct may not be used to impeach a witness' character or veracity unless the misconduct has resulted in the conviction of a crime involving moral turpitude. . . ." *Williams v. State*, 251 Ga. 749, 799 (312 SE2d 40) (1983). See also OCGA §§ 24-9-81–24-9-84 on methods of witness impeachment. Allen makes no suggestion that the incident in question resulted in any conviction, and did not attempt to prove one.

Allen also asserts that evidence of Young's report of kidnapping or physical abuse by McRae would show that she had a motive to kill McRae which, together with Early's account of hearing two men and an unknown woman arguing in the apartment shortly before the shot, could create a reasonable doubt that McRae was, in fact, killed by Allen.

> Certainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. [Cit.] However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature. [Cits.]

*Klinect v. State*, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998). Allen's desired cross-examination does not meet this test and would only serve to reflect poorly on McRae's character.

While Allen also argues that he was unable to show the nature of Young's feelings toward McRae, see OCGA § 24-9-68, the court only excluded evidence of abuse and Young's recanted claim of kidnapping, it did not forbid all inquiry on the subject of Young's bias. See *Beam v. State*, 265 Ga. 853, 856-857 (4) (463 SE2d 347) (1995). The court did not abuse its discretion in granting the State's motion in limine.

4. Burse testified that McRae told him on the day of his death

that he intended to buy the wheel rims. Vaughn also testified about his arrangement with McRae for the sale of the rims. Allen contends that the court erroneously admitted this testimony under the "necessity" exception to the hearsay exclusion rule. See *Peterson v. State*, 274 Ga. 165, 169 (3) (549 SE2d 387) (2001). But, these statements were not hearsay. Burse's statement was not offered for the truth of the matter asserted, i.e., that McRae would that day pay Vaughn $1,000 for the wheel rims. See *Livingston v. State*, 271 Ga. 714, 720 (5) (524 SE2d 222) (1999). Rather the statement was to show that Allen heard that McRae would do so, and therefore Allen could conclude that McRae possessed $1,000. Nor did Vaughn ascribe any statement to McRae, testifying only that he told McRae that he would sell the wheel rims for $1,000, and that he was in the act of removing the rims from his car when the police arrived. His only testimony in regards to whether he had spoken with McRae on the day of his death was that he had not.

*Judgments affirmed. All the Justices concur.*

CARLEY, Justice, concurring.

I concur in the majority opinion and in the judgment affirming the conviction. With regard to Division 4, I agree with the majority's conclusion that the challenged statements were *not* hearsay. However, even if viewed as hearsay, the statements have sufficient indicia of reliability. See *Peterson v. State*, 274 Ga. 165, 169 (3) (549 SE2d 387) (2001). "In determining whether there are sufficient indicia of reliability the trial court must examine the totality of the circumstances surrounding the making of the statements sought to be introduced. The test is whether 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.' [Cits.]" *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998). Here, factors which show the reliability of the statements include McRae's consistency in relating his planned purchase to others, and his lack of any motive to create a false story about purchasing the wheel rims.

Finally, even if the statements were wrongly admitted, Allen was not harmed. Young also testified that McRae told her that he planned to buy the wheel rims that day, but Allen does not challenge this testimony as improperly admitted. Additionally, Allen himself testified that McRae spoke of buying the wheel rims as something he had to do that day. With such duplicative testimony, any error was harmless. *Hayes v. State*, 265 Ga. 1, 3 (3) (453 SE2d 11) (1995); *Roper v. State*, 263 Ga. 201, 202-203 (2), & n. 2 (429 SE2d 668) (1993).

I am authorized to state that Justice Hunstein joins in this opinion.

■■■■■■■■■■■■■■■■■■■■

DECIDED MARCH 25, 2002 —
RECONSIDERATION DENIED APRIL 10, 2002.

■■■■■■■■■■■■■■■■■■

*Demetria N. Williams*, for appellant.

*J. Tom Morgan*, District Attorney, *Barbara B. Conroy, Elisabeth G. Macnamara*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Ruth M. Bebko*, Assistant Attorney General, for appellee.