S05A1561. SHEPHERD v. THE STATE.
(626 SE2d 96)

THOMPSON, Justice.

Kenneth Fleming Shepherd was tried by a jury for various crimes in connection with the shooting death of his 14-year-old half sister, Elizabeth Burgess. The jury found Shepherd not guilty by reason of insanity of malice murder, and guilty but mentally ill of the remaining charges.[1] With regard to the malice murder verdict, the trial court ordered civil commitment pursuant to OCGA § 17-7-131

---

[1] The crimes occurred on December 12, 2002. Shepherd was indicted on February 20, 2003, and charged with malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. Trial commenced on September 13, 2004. On September 17, 2004, the jury found Shepherd not guilty by reason of insanity of malice murder and guilty but mentally ill of the five remaining counts. On September 30, 2004, the trial court entered an order, pursuant to the malice murder verdict, committing Shepherd to the Department of Human Resources. That same day, the trial court merged the counts of felony murder predicated upon aggravated assault, aggravated assault, and possession of a firearm by a convicted felon into the felony murder count predicated upon the possession of a firearm by a convicted felon and sentenced the defendant to life in prison on that count and to five consecutive years on the count of possession of a firearm during the commission of a crime. The trial court explicitly ordered that the civil commitment and Shepherd's life imprisonment sentence on the felony murder count commence simultaneously, and that only if he were ever to be discharged under the civil commitment could he then be taken into possession by the Department of Corrections. Shepherd's timely filed motion for new trial was denied on April 14, 2005. A notice of appeal was filed on May 13, 2005 and the case was docketed in this Court on June 10, 2005. Oral argument was heard on September 7, 2005.

(d). Shepherd was also sentenced to life imprisonment for felony murder predicated on possession of a firearm by a convicted felon, and to a five-year consecutive term for possession of a firearm during the commission of a crime. The remaining counts were merged for purposes of sentencing.

On appeal, Shepherd asserts that the jury's verdicts of not guilty by reason of insanity of malice murder and guilty but mentally ill of the remaining counts are mutually exclusive and cannot stand; that by virtue of his civil commitment and his sentence of life imprisonment he is being punished twice for the same killing in violation of his double jeopardy rights; and that the trial court erred in its instruction to the jury on felony murder. Finding no merit to these contentions, we affirm.[2]

Shepherd shot and killed Elizabeth in their family home. He walked across the street to a neighbor's house where he called 911 and told the operator that his sister had fallen and needed an ambulance; he then returned home. When an ambulance arrived, Shepherd met two EMTs at his front door. They asked the location of the injured person and the circumstances of the injury. At that point, Shepherd replied that his sister had been shot. They then asked if he knew who shot her, and Shepherd replied, "I did." The EMTs left the house immediately and called for law enforcement assistance. Shepherd met the EMTs in his driveway, and when asked the location of the gun, Shepherd replied that he had thrown it back behind the house. Shepherd also volunteered that his sister had been "sexually harassing" him, and "I did what I had to do." Once law enforcement assistance arrived, the paramedics were able to assess the victim and to confirm that she was dead.

Shepherd was arrested at the scene, and while being placed in a patrol car, he spontaneously told the arresting officer that he shot the victim three times in the back of the head and then threw the gun into the woods. He was transported to the DeKalb County Police Department where he received *Miranda* warnings, executed a waiver, and gave a statement to the investigating officers. In that interview Shepherd told the officers that he bought a .380 caliber pistol from a man about three months earlier. He stated that his sister had been sexually harassing him, was sexually promiscuous, and had questioned his masculinity. When asked about the circumstances of the shooting, Shepherd stated that his sister "tried to run up behind me

---

[2] Because judgments of conviction and sentences were entered only for the crimes of felony murder based on possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime, we do not consider any arguments on appeal relating to the remaining counts of the indictment. See *Mikenney v. State,* 277 Ga. 64 (1) (586 SE2d 328) (2003); *Smith v. State,* 258 Ga. 676, 679 (11) (373 SE2d 200) (1988).

[and] . . . assault me" because "I wouldn't have sex with her and her friends"; that she went to the kitchen sink to get a knife with which to attack him; and as she turned toward him, he opened fire striking her at least twice. Shepherd stated that he shot her again in the neck as she was trying to get away; he then pulled her away from the doorway; tossed his pistol in the backyard; and went across the street to call 911. He also disclosed that he had a prior felony conviction for eluding the police. When asked by a detective if he was sorry about the events, Shepherd answered, "No, I think I'm right."

It was established that bullets collected at the scene and those retrieved from the body had been fired from a .380 caliber pistol. One bullet entered the victim's right arm near the shoulder, a second bullet entered the left arm and then reentered through the chest, and a fatal shot was fired through the back of the head. Two weeks later, the weapon used to shoot Elizabeth was found in Shepherd's bedroom concealed in a slit in his mattress.

Shepherd entered a plea of insanity but was found competent to stand trial. At trial, the defense and the State offered conflicting expert testimony as to whether Shepherd was insane at the time of the shooting. The State's forensic psychologist diagnosed Shepherd with schizoaffective disorder and testified that although Shepherd was mentally ill, he was able to distinguish between right and wrong and could thus be held criminally responsible for his conduct. It was also the opinion of that expert that at the time of the shooting Shepherd was suffering from a long-held delusion that his sister and her friends were sexually harassing him; however, this delusion did not relieve him of criminal responsibility because it was not related to the shooting, did not overmaster his will, and would not have justified his actions had it been true. The expert also testified Shepherd told her he knew he should not have a gun because he was a convicted felon.

The defense presented testimony from a neuropsychiatrist who diagnosed Shepherd as suffering from paranoid schizophrenia, and opined that at the time of the shooting he did not have the mental capacity to distinguish right from wrong in relation to the crime. It was also the opinion of the defense expert that at the time of the shooting Shepherd was operating under a delusional compulsion that his sister was going to attack him with a knife, that this delusion overmastered his will to resist shooting her, and had she actually been attacking him or about to attack him, Shepherd would have been justified in shooting her.

1. Shepherd contends that the jury's verdicts of not guilty by reason of insanity and guilty but mentally ill of the remaining offenses cannot be logically reconciled and, therefore, the verdicts are mutually exclusive.[3]

"Verdicts are mutually exclusive 'where a *guilty verdict* on one count logically excludes a *finding of guilt* on the other.'" (Emphasis supplied.) *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003), citing *United States v. Powell*, 469 U. S. 57, 69, n. 8 (105 SC 471, 83 LE2d 461) (1984). Thus, the rule against mutually exclusive verdicts applies to multiple guilty verdicts which cannot be logically reconciled; the rule is not implicated where, as here, verdicts of guilty and not guilty are returned. *Dumas v. State*, 266 Ga. 797 (2) (471 SE2d 508) (1996).

This Court recently explained the application of the mutually exclusive verdict rule in *Jackson,* supra and *Flores v. State*, 277 Ga. 780 (596 SE2d 114) (2004). In both cases, we held that convictions for felony murder based on aggravated assault with a deadly weapon and involuntary manslaughter based on reckless conduct were mutually exclusive where the jury could have found that the defendant acted with both criminal intent and criminal negligence at the same time, as such represents a positive, but illogical finding. When a "reasonable probability" exists that two mutually exclusive verdicts have been rendered, the two verdicts cannot stand and a defendant is granted a new trial. *Flores,* supra at 785 (3).

Although Shepherd's argument is couched in terms of "mutually exclusive verdicts," in effect his complaint is that the verdicts of not guilty by reason of insanity and guilty but mentally ill are inconsistent. The inconsistent verdict rule in criminal cases, however, was abolished in this state two decades ago in *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986), when we adopted the federal standard set forth in *United States v. Powell*, 469 U. S. 57 and *Dunn v. United States*, 284 U. S. 390 (52 SC 189, 76 LE 356) (1932).

---

[3]     In Georgia, a person is not legally insane simply because [he] suffers from schizophrenia or a psychosis. Rather, a defendant is not guilty by reason of insanity if, at the time of the criminal act, the defendant did not "have [the] mental capacity to distinguish between right and wrong in relation to such act" or a mental disease caused "a delusional compulsion [that] overmastered [his] will to resist committing the crime." [OCGA §§ 16-3-2; 16-3-3; 17-7-131 (a) (1).] A defendant who is not insane may nonetheless be found guilty but mentally ill if, at the time of the crime, the jury finds beyond a reasonable doubt that [he] committed the crime and had "a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." [OCGA § 17-7-131.]
*Boswell v. State*, 275 Ga. 689, 690 (1) (572 SE2d 565) (2002).

In *Powell*, the United States Supreme Court rejected "as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."

*Smashum v. State*, 261 Ga. 248, 249 (2) (403 SE2d 797) (1991). *Powell* also made clear that the inconsistent verdict rule applies to inconsistencies between verdicts of acquittal and verdicts of conviction and has no application to cases involving mutually exclusive multiple convictions. *Powell*, 469 U. S. at 69, n. 8. We reiterated that principle in *Dumas*, supra.

In *Milam*, supra, on facts very similar to the case now before the Court, a criminal defendant was charged with the murders of two victims committed seconds apart. The jury returned a verdict of not guilty by reason of insanity as to one murder, and guilty but mentally ill as to the other, and the defendant challenged the verdicts as inconsistent. This Court affirmed, abolishing the inconsistent verdict rule, id. at 562 (2), and ruling that the evidence supports the verdict of guilty but mentally ill. Id. at 563 (3).

Likewise, virtually all other Georgia cases affirming Georgia's abolition of the inconsistent verdict rule involve jury verdicts of guilty and not guilty that are alleged to be inconsistent. These cases are in accordance with the principle that it is not generally within the trial court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts.

*Dumas*, supra at 799 (2).

Although our appellate courts have not had occasion to consider a case where a verdict of not guilty by reason of insanity and a guilty verdict were returned with respect to offenses against the same victim occurring simultaneously, other courts have consistently upheld such convictions. Under facts very similar to ours, the Appeals Court of Massachusetts considered a case in which a defendant was found not guilty of murder by reason of insanity, but guilty of unlawfully carrying the firearm used to shoot the victim. *Commonwealth v. Chandler*, 29 Mass. App. Ct. 571 (563 NE2d 235) (1990). The *Chandler* court affirmed the conviction, noting: "[t]he fact that the

verdicts might be factually inconsistent is of no avail to the defendant. It is well settled that 'factual inconsistencies in verdicts rendered in the same case do not afford a ground for setting aside a conviction.' " *Chandler*, 29 Mass. App. Ct. at 581. See also *Edwards v. State*, 797 S2d 1049 (Miss. App. 2001) (refusing to apply inconsistent verdict rule, the court upheld verdicts of not guilty by reason of insanity of kidnapping and guilty of aggravated assault on the same victim). See also *Commonwealth v. McLaughlin*, 431 Mass. 506, 508 (729 NE2d 252) (2000) (defendant killed two victims and then set fire to his room which resulted in the death of another; he was found not guilty by reason of insanity of two counts of murder and guilty of involuntary manslaughter and arson; " 'mere inconsistency in verdicts . . . will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury' "); *People v. Bielecki*, 964 P2d 598, 605 (Colo. Ct. App. 1998) ("defendant may be found not guilty by reason of insanity or impaired mental condition as to one charge, and guilty as to other charges, even where all arise out of the same criminal episode"); *Lleo v. State*, 601 S2d 1292, 1293 (Fla. Ct. App. 1st Dist. 1992) (jury's verdict of not guilty by reason of insanity of aggravated battery and guilty of possession of contraband in a state correctional institution "reflect only what has been referred to as a 'logical inconsistency,' which has long been recognized as an acceptable exercise by the jury of its power of lenity"); *Ruiz v. Texas*, 641 SW2d 364 (Tex. App. 1982) (defendant found not guilty by reason of insanity of three counts of murder and guilty of another murder, all committed during the same crime spree; Texas court affirmed, rejecting the inconsistent verdict rule).

For the foregoing reasons, we hold that the jury's verdicts in Shepherd's case must be affirmed.

2. The jury heard evidence that Shepherd purchased the .380 caliber handgun three months before he killed his sister with it, from a man he did not know, at the store he used to frequent. Additionally, he told the State's psychologist he knew he should not have a firearm because of his felony record. Although the jury accepted the testimony of the defense expert insofar as the jury concluded that Shepherd was insane with regard to the malice murder of his sister, apparently the jury was not satisfied to the same degree of certainty that Shepherd was insane with regard to the weapon possession and the resulting felony murder.

We conclude that any rational trier of fact could have found from the evidence adduced at trial, construed in a light most favorable to the verdict, that Shepherd was guilty of felony murder and possession

of a weapon in the commission of a crime, albeit mentally ill at the time of the crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Shepherd is not being subjected to double punishment in violation of his rights against double jeopardy as provided by Art. I, Sec. I, Par. XVIII of the Georgia Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U. S. 435, 440 (109 SC 1892, 104 LE2d 487) (1989). Here, the Court is concerned with the third harm contemplated by the Double Jeopardy Clause — prohibiting the State from "punishing twice, or attempting a second time to punish criminally for the same offense." (Punctuation omitted.) *United States v. Ursery*, 518 U. S. 267, 273 (116 SC 2135, 135 LE2d 549) (1996).

In *Halper*, supra, the Supreme Court held that a civil sanction may constitute punishment for purposes of the double jeopardy clause only if it can be described as punitive; and a civil sanction that does not bear a rational relation to a nonpunitive purpose will be treated as punishment. 490 U. S. at 449. Thus, if Shepherd's civil commitment is deemed punitive, his prison sentence is barred by double jeopardy protections. In making that assessment, *Halper* requires "a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." 490 U. S. at 448.

According to our statutory scheme, a criminal defendant found not guilty by reason of insanity is ordered to be detained in a mental health facility for evaluation for a period not to exceed 30 days. OCGA § 17-7-131 (d). If the evaluation report shows that the defendant does not meet the statutory inmate commitment criteria, the trial court may issue an order discharging defendant without a hearing, OCGA § 17-7-131 (e) (1), and if not so discharged, a hearing must be conducted. OCGA § 17-7-131 (e) (2). If, after a hearing, the trial court determines that defendant meets the statutory inpatient commitment criteria, defendant is to be committed to the Department of Human Resources to receive involuntary treatment; however, such determination by the court triggers a panoply of due process rights as set forth in OCGA § 17-7-131 (e) (4). Finally, the court is authorized to discharge defendant upon successful completion of treatment. OCGA § 17-7-131 (e) (5).

As the United States Supreme Court stated in *Kansas v. Hendricks*, 521 U. S. 346, 361 (117 SC 2072, 138 LE2d 501) (1997), "[a]lthough we recognize that a 'civil label is not always dispositive,'

[cit.], we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme (is) so punitive either in purpose or effect as to negate (the State's) intention' to deem it 'civil.' [Cit.]" Here, our legislature advanced remedial goals with respect to the treatment of an insanity acquittee. Accordingly, we hold that the statutory scheme "permitting psychiatric treatment rather than merely imprisonment alone," *Salter v. State*, 257 Ga. 88, 90 (2) (356 SE2d 196) (1987), is not punitive, and double jeopardy's multiple punishment concerns are not implicated. *Halper*, supra.

4. Shepherd was not entitled to a jury instruction on foreseeability with respect to felony murder, where none was requested.

[A] criminal defendant is ordinarily required to present written requests for any desired jury instructions. OCGA § 5-5-24 (b). He is relieved of this duty only "where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence. [Cit.]"

*Camphor v. State*, 272 Ga. 408, 414 (6) (b) (529 SE2d 121) (2000). Here, the court gave the complete pattern instruction on felony murder, as well as all other theories applicable to the evidence. Thus, the jury was given appropriate guidelines and the failure to give a foreseeability charge sua sponte did not constitute error. Id. at 413 (6) (a).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 30, 2006 —
RECONSIDERATION DENIED FEBRUARY 27, 2006.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, James M. McDaniel, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.

*Sabrina D. Rhinehart, James C. Bonner, Jr.*, amici curiae.